## FULLER-WARREN CO. v. MICHIGAN STOVE CO.[1]

(Circuit Court of Appeals, Seventh Circuit. April 1, 1898.)

### No. 441.

**1. PATENTS—NOVELTY AND INVENTION.**

The patent law was not intended to foster attempts to appropriate and monopolize things of commonplace character and of familiar use, on the ground that, though frequently employed even in patented devices, they have not been claimed as inventions, and their uses and benefits exploited.

**2. SAME—IMPROVEMENT IN STOVES.**

The Keep patent, No. 368,770, for an improvement in stoves, the essential features consisting of an inturned, mica-filled section over the fire pot, a reflector above the inturned section, and mica interposed between the fire and reflector, arranged to spread light and heat, covers results rather than the means of producing them, and is void for want of patentable invention. 81 Fed. 376, reversed.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

By the decree below, the second and fifth claims of letters patent of the United States, No. 368,770, issued on August 3, 1887, to William J. Keep, assignor to the appellee, for an improvement in stoves, were declared valid, and to have been infringed by the plaintiff in error. The specification of the patent contains the following statements: "This improvement relates more particularly to that class of stoves provided with reflectors to deflect light and heat; and the invention consists mainly in the attachment to stoves of a reflector in such a position that the heat or light will first pass through the walls of a stove to a reflector or reflectors, and in certain details of construction and arrangement of parts, whereby the beforesaid main feature is carried out. * * * In carrying out my invention, I prefer to use a stove such as is shown in Fig. 1. The lower part, A, of this stove, up to the point marked 'z,' may be of any approved pattern, as it is only above this point that my invention begins. * * * Above the part A, I have the usual mica doors, as shown at B, and above that again is an inturned section, C, preferably slightly convex, although it may be flat if desired, and either inclined or horizontal, and having openings filled with mica. Above this inturned section is an overhanging section, D, in front of which is a reflector, E, preferably set a slight distance away from the same, so as to leave an air space between the two, to prevent the reflector becoming heated and discolored. * * * I prefer to extend the inturned section, C, nearly or quite to the center of the stove, so as to obtain as large an amount of aperture for the mica lights as possible. * * * In some cases, in addition to the reflector in front, as shown in Fig. 1, I extend the inturned section, C, around on each side, as shown in Fig. 2, and place reflectors, E', at the sides, as shown, which may be arranged in two, three, or all four sides as preferred. I do not limit myself to magazine stoves, such as are shown in Figs. 1 and 2; but the reflecting principle may be carried out in many other ways, which will be obvious to stove manufacturers. For instance, in an ordinary cylinder stove the door may or may not be filled with mica at all, but may be an ordinary metal door and a mica cover, C, run in over the fire, as shown in Fig. 3, and the curved overhanging plate, D, extended forward to connect with the front wall of the stove; or I may provide a stove of cylindrical or other form with a top having openings for mica extending nearly or entirely over the top, and set a reflector on the back of said top as shown in Fig. 5. The same feature may be applied

[1] Rehearing denied June 10, 1898.

to a cook stove by providing in lieu of the ordinary covers others provided with mica-filled openings, as shown at H, and securing thereto a reflector, E″.. Instead of the face of the section C being curved, it is obvious that it may be made with a plane surface, if desired. It is also obvious that transparent or translucent materials other than mica may sometimes be used in lieu thereof. * * * I deem it important that the mica be placed between the reflector and the fire. * * * Having thus described what I at present consider the preferable ways of carrying out my invention, but without intending to limit myself thereto, I claim as new: (2) The combination, in a stove, of a vertical section, as A, B, inclosing the fire pot, an inturned section, C, arranged over the fire pot, a reflector, E, arranged above said inturned section, and mica interposed between the fire and reflector, substantially as described. * * * (5) The combination, in a stove, of a vertical section, an inturned section, C, having openings filled with mica, and multiple reflectors as E′, E′, arranged to diffuse and spread the rays of light and heat in various directions, substantially as described."

The following are the drawings of the patent:

E. H. Bottum, for appellant.
Ephraim Banning, for appellee.
Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

If valid, this patent must be held to embrace any form of construction which, in respect to the elements of the claims, shall be substantially like or equivalent to any of the forms shown in the drawings. "The reflecting principle," says the specification, "may be carried out in many other ways which will be obvious to stove manufacturers." As illustrated in Figs. 1, 2, and 3, the invention will include any stove so constructed that the light passing through a door or window of mica will strike upon and be reflected into the room from a polished surface upon any part of the stove, or from a reflector attached to the stove. As illustrated by Figs. 4 and 5, it will include any stove with a reflector so adjusted with reference to an opening filled with mica as to turn into the room the transmitted light. The claims contemplate that the mica shall be located above or over the fire pot, but that is accidental merely, and constitutes no essential feature of the mechanism; no more than does "the vertical section" inclosing the fire pot, which in other claims is described as "substantially vertical." If good for anything, the claims are the same as if for a stove with an opening filled with mica or other translucent material, so placed that light from the interior of the stove passing through the opening will strike upon a reflector attached to the stove or upon a polished part of the stove, and be reflected into the surrounding space. The patent is for a mechanism, and not for a design; and whether the location of the opening be on the top or side or bottom of the stove, if only light from the interior pass through it, the difference of location cannot affect the character of the mechanism, which, manifestly, will embody the invention as much when found in one part of the stove as another. Practically, the patent covers results rather than the means of producing them. It is not pretended that the manufacturers of stoves, of whatever form, old or new, have not the right to polish them outside and inside if they please, and also have the right to put in them ad libitum openings filled with mica. There could be no invention in doing so; but, if this patent is good, it will be infringed if, by chance or design, a stove of any pattern be so constructed that a ray of light through a piece of mica will strike upon a reflecting surface attached to or constituting a part of the stove. For instance, the laundry stove of Green, as shown in design patent No. 101, has two inturned surfaces related to each other as the parts of an hourglass. For the purpose of utilizing the light in the stove to illuminate the room, the owner or maker of that stove may rightfully insert in the lower inturned surface a piece of mica; but, once he does it, he is an infringer of this patent, because the light will strike upon the opposite surface above, and be reflected. In other words, in that form of stove a plate of mica cannot be used in the part next over the fire pot, unless, by the use of dead black paint or otherwise, the upper opposite surface be made and kept nonreflecting. The same is true of the many varieties of stoves on the project-

86 F.—30

ing or overhanging parts of which, whether polished for the purpose or not, the light passing through mica plates may strike and be reflected. Without going further into the details of the discussion, it is enough to refer to the fireplace heater of James Spear, as illustrated in a catalogue published in 1884 at Philadelphia. Around that heater is a frame, of which the catalogue says: "The frame is large and full nickel plated, has a concaved surface, and extends back some distance, catching the light from the mica windows, and acts as a reflector, casting the light and heat into the room." In this device the inturning is on horizontal instead of vertical lines, and the reflection, of course, is from that part of the frame which is adjacent to the side of the heater; but the mica is placed between the reflector and the fire, and the objection that "there is no provision of an inturned mica section and reflector serving in any manner to reflect the rays of light and heat from the upper surface of the fire pot" is without force upon the question of patentability. Nothing was lacking to the Spear device to fulfill that condition but to put a mica window in the upper part, which was already inturned and capped with a reflector in proper place. To do that certainly could not have been invention. It may be remarked that the "reflecting principle" and the mechanism involved in this patent have long been exemplified in the ordinary forms of lamps and glass chimneys, and the reflectors and shades used in connection therewith.

There is a degree of credit due to one who explores out of the way or hidden places, and brings to the light and to the uses of civilization, as "abandoned experiments," the discoveries of others, whose genius was itself a disqualification for the achievement of practical success; but it is certainly no part of the intention of the patent law to foster attempts to appropriate and monopolize things of commonplace character, and of familiar use, on the ground that, though frequently employed even in patented devices, they have not been claimed as inventions, and their uses and benefits exploited. The obvious need not be explained. The decree below is reversed, with costs, and with direction to dismiss the bill.