## SPERRY MFG. CO. v. J. L. OWENS CO.

(Circuit Court, D. Minnesota, Fourth Division. October 19, 1899.)

PATENTS—INVENTION—FANNING MILLS.

The Sperry patent, No. 267,032, for a fanning mill, shows only a combination of old appliances and devices long used in fanning mills in a manner which produces only old results, and evolves no new functions, and is void for want of invention.

Suit in equity by the Sperry Manufacturing Company against the J. L. Owens Company for infringement of a patent.

Paul & Hawley, for complainant.
C. S. Cairns, for defendant.

LOCHREN, District Judge. The parties are Minnesota corporations, each engaged in the manufacture and sale of fanning mills for cleaning and separating grain; and the complainant, as licensee of Willis Sperry, to manufacture, use, and sell grain cleaning and separating machines, under patent No. 267,032, issued to said Willis Sperry, November 7, 1882, brought this suit to restrain the defendant from infringing the said patent, and for damages and an accounting of profits in respect to past infringements. The defendant denies infringement, and also attacks the validity of the Sperry patent, pleading numerous prior patents as showing anticipations of Sperry's alleged invention. The claims of the Sperry patent are as follows:

"(1) In combination with a hopper, the upper grain-receiving screen, G, the lower and coarser screen, J, the adjustable lower screen, K, inclined in the opposite direction, and the spouts, D and E, arranged the former beneath screen J, and the latter beneath screen G, as described. (2) The combination of the screen, G, the coarser screen, J, adapted to receive the tailings therefrom, the spout, D, located beneath the screen J, a second spout, E, inclined in the opposite direction, and arranged to receive the material passing through the lower end of the screen G, and the bottom screen, K, inclining in the opposite direction from the upper screen, G, and arranged to receive the material passing through the upper end of said screen. (3) In a grain separator, the vibratory shoe or shaker, B, the two oppositely inclined spouts, D and E, attached to the foot of said shoe, and partaking of its movements, in combination with the screens, G and J, and longitudinal adjustable screen, K, arranged in the relative positions described. (4) The combination of the screen G, coarser screen, J, spouts, D and E, longitudinally adjustable screen, K, and board, L, arranged with respect to the inner spout and the adjustable screen, as described and shown."

The specification states that "the invention consists in a peculiar combination and arrangement of screens and conductors"; and the patentee states therein further:

"I am aware that machines have been variously constructed with double conducting spouts therein, said spouts inclined in opposite directions. I am also aware that coarse and fine screens have been employed in various combinations, and under various arrangements, and I make no claim thereto; but I am not aware of any machine wherein the screens and troughs bear to each other the same relation as those herein described."

Sperry does not claim to be the inventor of any separate part or appliance of his machine, but only of a peculiar combination of

constituents, which were all well known and in use in such machines before such combination was made.

Aside from what is shown by the numerous patents put in evidence by the defendant, it is matter of common knowledge that fanning mills for cleaning, winnowing, and separating grain, constructed in partially inclosed frames, with rotary fans, and with oscillating and vibrating inner frames called "shoes" or "shakers," containing a series of parallel inclined screens or sieves, and beneath that series one or more oppositely inclined screens or sieves, shaken by the same power that revolves the fan which generates the blast to drive out of the machine the chaff and light impurities as the mass comes from the hopper upon and through the shaking sieves, and with variations in the meshes of the sieves or perforations in the screens to separate the various kinds of grain and seeds, and with gather boards and spouts to convey them to separate receptacles, have been in very general use among the farmers of this country for at least half a century, and that similar appliances have, during the same time, been used for the same purposes in the separators of threshing machines. Sperry's machine is but an aggregation of old appliances. Its merit consists in its superior utility, as compared with older machines, in separating wheat and oats when grown together, as of late years, in the crop, which, from the mixture, has been called "succotash." In that machine the higher part, marked G, of the upper screen, upon which the mass first comes from the hopper, has its mesh adapted for the passage through it of the full and perfect kernels of wheat with the small seeds of all kinds, which also go through the lower parallel sieves of the same series to the reverse sieve, K, which lets through the small seeds, which are conducted by the board, L, to their receptacle, while the cleaned wheat passes over the lower end of screen K to its receptacle, or out of the machine. At the lower end of screen G some wheat mixed with oats passes through the upper series of screens, and falls into the spout E, and is thereby conducted to a receptacle outside the machine, to be returned to the hopper; the screen K being slidable longitudinally, so that its upper end, above spout E, can be adjusted so as to receive only the cleaned wheat, leaving that which has a mixture of oats to fall into the return spout, E. Because of the smallness of the mesh of screen G, and the effect of the air blast, most of the oats pass over that screen to its continuation in the larger-meshed screen, J, through which the oats pass, well cleaned and separated from the wheat and smaller seeds, into the spout D, which conducts them to a receptacle outside the machine. The most serious question in this case is whether the Sperry patent is not invalid from lack of invention, as being merely an aggregation of prior devices used for the same purposes in similar machines, and each performing its well-known function in the old way, and producing no new result. The latest statement by the supreme court of the law on this subject is in the case of Office Specialty Mfg. Co. v. Fenton Metallic Mfg. Co., 174 U. S. 492, 496, 19 Sup. Ct. 643:

"Where a combination of old devices produces a new result, such combination is doubtless patentable; but where the combination is not only of old ele-

ments, but of old results, and no new function is evolved from such combination, it falls within the rulings of this court in Hailes v. Van Wormer, 20 Wall. 353, 368; Rockendorfer v. Faber, 92 U. S. 347. 356; Phillips v. City of Detroit, 111 U. S. 604, 4 Sup. Ct. 580; Brinkerhoff v. Aloe, 146 U. S. 515, 517, 13 Sup. Ct. 221; Palmer v. Village of Corning, 156 U. S. 342, 345, 15 Sup. Ct. 381; Richards v. Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831. Hoffman may have succeeded in producing a shelf more convenient and more salable than any which preceded it, but he has done it principally, if not wholly, by the exercise of mechanical skill."

To the same effect are Smith v. Nichols, 21 Wall. 112, 119; Fuller Warren Co. v. Michigan Stove Co., 30 C. C. A. 193, 86 Fed. 463, and cases cited.

The combination of Sperry's screen G, having its mesh adapted to the passage through it of wheat and smaller seeds, with its continuation, screen J, of coarser mesh, adapted to the larger size of oats, is disclaimed by Sperry in his specifications, and is shown in prior patents. The double conducting spouts inclined in opposite directions are also disclaimed, and are likewise shown in prior patents. Indeed, the use of inclined spouts in fanning mills to convey separated divisions of grain to receptacles outside the machine were well-known substitutes for drawers in the machine, or boxes under it, to receive such divisions of grain, long before the complainant's alleged invention. A lower screen, inclined in a direction opposite to the inclination of the upper screens, was also an old appliance at that time; and in patent No. 39,090, issued to Elijah Youngs June 30, 1863, such oppositely inclined lower screen was made longitudinally movable and adjustable, the same as in the complainant's machine, and for the same expressed purpose of being capable of such adjustment as would separate the well-cleaned wheat falling through the upper part of the upper screens from that falling through the lower part of the upper screens in which there will be some mixture of oats. When the Youngs patent, referred to, is studied, it will be found to contain all the combinations of complainant's patent, operating in substantially the same way to attain the same results,—the division of the grain into three parcels: (1) The cleaned wheat falling through the upper part of the upper sieves upon the lower adjustable reversely inclined sieve; (2) the cleaned oats going into a receptacle at the end of the upper sieve; and (3) the intermediate mixture of wheat and oats falling beyond the upper end of the lower adjustable sieve into a receptacle, to be thence returned to the hopper. It was urged on the argument that the machines actually built by Youngs under his patent used a shaker vibrating endwise, and that this movement is not as well adapted for the use of spouts attached to the end of the shaker, or to the separation of the cleaned wheat from that mixed with oats by the adjustment of the lower screen, as is the movement of a shaker having a sidewise vibration. But the endwise and sidewise vibrations of shakers in fanning mills were both old at the time of the Youngs patent, which, by designating neither, left the choice to any mechanic who might construct the machine. Considering the spouts used in the complainant's machine to receive the divisions of grain, and convey them to receptacles outside the machine, as well-known

96 F.—62

substitutes for drawers in the machine, or boxes at its bottom, to receive the same divisions of the grain, the principal difference between the Youngs patent and that of complainant in respect to appliance is that in the former the oats appear to pass entirely over the upper screen, and "are secured in any desirable manner," while in the latter the oats pass through the meshes of the coarser screen, J, into the outer spout, D, while that coarser screen helps to carry the straw beyond that spout. But such coarser screen to let the oats pass through to their receptacle, while carrying the straw over, is an old device, and is shown in patent No. 43,026, issued to Aaron Higley June 7, 1864, patent No. 56,912, issued to Charles K. Ehle August 7, 1866, and several other earlier patents. My conclusion is that the Sperry patent is but a combination of old appliances and devices, long used in fanning mills, and free to every one, in a manner which produces only old results, and evolves no new function. It is therefore void for lack of invention, and decree may be entered dismissing the bill, with costs.