146 U.S. 515
 13 S.Ct. 221
 36 L.Ed. 1068
 BRINKERHOFF et al.
v.
ALOE.
 No. 85.
 December 12, 1892.
 
 Suit by Milford H. Brinkerhoff and Willie C. Brinkerhoff, executors of Alexander W. Brinkerhoff, deceased, against Albert S. Aloe, for infringement of a patent. The circuit court held that the patent was void for want of invention, and because of anticipation by prior devices, and dismissed the bill. 37 Fed. Rep. 92. Complainants appealed. Affirmed.
 The case is stated in the opinion delivered below by THAYER, J., which is here given in full:
 
 
 1
 'This is a bill to restrain the infringement of letters patent No. 224,991, granted to Alexander W. Brinkerhoff, under date of March 2, 1880, for an improvement in 'rectal specula,' The patentee, in his specification, thus describes his invention: 'My speculum is made of metal, and plated in the usual manner, to secure a bright interior and smooth surface. In shape it is conical, and has one side slotted through its entire length of chamber. Into such slot is closely fitted a movable slide, having upon its rear end a handle for actuating it. On the side of the tube opposite the slide is another handle, by which to hold the tube when in use. Around the large end of the tube is a flange or lip, * * * and in the forward end of the chamber is an incline, made necessary in specula having closed ends, * * * to prevent the impaction of pile tumors, enlarged glands, or surplus membrane in the end of the chamber, and thereby enable the operator to withdraw the instrument with safety and ease.' Of the nature of his invention the patentee says: 'My invention consists in the use of a slide extending through the length of one side of the tube, and an incline inside of the forward or small end of the chamber, extending from the bottom of the chamber upward and forward to the under side of the slide when in place, to prevent injury to the membrane while withdrawing the instrument,' etc. The claims made in the specification are as follows: '(1) A slide in the side of a speculum, extending through its whole length, and used substantially as herein described. (2) The incline in the front end of the chamber, in combination with the tube, slot, and slide, substantially as and for the purposes herein set forth. (3) In cylindrical tubular specula having a slotted side and closed end to prevent the entrance of faeces, the incline in the front end of the chamber, extending upward from the bottom and forward to under side of slide, substantially as described, and for the purposes herein set forth.'
 
 
 2
 '1. It is clear that the first claim of this patent, covering 'a slide in the side of a speculum extending through its whole length,' cannot be sustained. Indeed, it is not seriously contended by complainant's counsel that the device covered by that claim is novel.
 
 
 3
 Hilton's rectal speculum, an instrument said to have been in use in England as early as 1870, also clearly anticipates the first claim of complainant's patent, and probably the second and third claims. If Hilton's speculum, as contended, was described in a printed publication in England as early as 1876, that fact also invalidates the first claim of the patent under consideration, and most likely the second and third claims.
 
 
 4
 I shall not go into the details of the evidence, therefore, on this branch of the case, but will content myself with the general statement that the testimony of Dr. Warren B. Outen, Dr. Charles Bernays, and Dr. Charles E. Michel, as well as the testimony of William Grady and Herman Speckler, satisfies me that rectal speculums closed at one end, having a slot in the side extending the full length of the chamber, and fitted with a slide, had been used by the medical fraternity in this country before the date of the alleged invention. While it is true that defendant has not produced any of the specula that were so in use, and has only produced a model of one made in his own shop since this suit was filed, known as the 'Reed Speculum,' yet I consider this fact not sufficient in itself to overcome the positive statements of intelligent and entirely disinterested witnesses, who had occasion to know the fact whereof they speak, that specula with slotted sides fitted with slides were in use, and to some extent were on sale, in this country prior to the date of the alleged invention in July, 1878. The Reed instrument, and possibly all the instruments of which the witnesses above named have spoken, had glass slides, instead of metal; but that fact is not important, as the material of which the slide is composed is not claimed as an essential feature of the device. But, even if the foregoing view is erroneous, I am furthermore of the opinion that the first claim of the patent was anticipated by 'Segala's Tri-Valve Vaginal Speculum,' which was produced on the hearing and was shown to have been in use in this country since 1860; also by the 'catheter' which was produced on the trial, and shown to have been on sale in this country since 1874. The uses for which both of the instruments last referred to were designed are analogous to that in which complainant employs his instrument. Both instruments are tubular; each has a slot in the extending the full length of the chamber fitted with a metal slide, which is intended to be wholly or partially withdrawn (the same as the slide in the rectal speculum) when the operator has occasion to examine or treat the particular organs for the treatment of which these instruments were constructed. In view of the slides shown in Segala's vaginal speculum, and in the catheter, and the use made of the same, it must be held that there is nothing novel in the slide in complainant's patent. He has, in this particular matter, merely appropriated a device long known and used in surgical instruments fitted for the examination of certain interior membranes or cavities of the body, for the improvement of another instrument adapted to the treament of other interior membranes. The original printed publication relied upon, said to have been published in London as early as 1876, was not produced at the hearing before the master, but in lieu thereof a volume entitled 'Rest & Pain,' published in New York in 1879, which purports to be a reprint of the earlier English publication, was produced. Some testimony was offered to the effect that application had been made to the English publishers, and to other booksellers in London and in this country, for a copy of the original publication, and that they reported the work to be out of print. All of the testimony, however, tending to show that a book entitled 'Rest & Pain' was published in London in 1876, and that the work reprinted in this country in 1879 is an accurate copy thereof, is of the nature of hearsay; and as objection was duly taken to the testimony when it was produced before the master, and was insisted upon at the trial, the objection must be sustained, no matter how persuasive the inference may be that there was a foreign publication which described Hilton's speculum. The latter instrument is accordingly ignored as an anticipation of complainant's invention.
 
 
 5
 '2. The third claim of the patent is a claim for the 'incline' in cylindrical tubular specula having a slotted side and closed end.
 
 
 6
 The particular device attempted to be covered by this claim was anticipated, in my opinion, by a rectal speculum produced by Dr. Mudd, and shown to the satisfaction of the court to have been purchased at an instrument store, and to have been in use in this country before the date of complainant's invention.
 
 
 7
 The instrument in question is tubular. It is conical in form, has a slotted side, a closed end, and, what is of more importance, an incline at the closed end, extending from the bottom of the chamber upward and forward to the end of the slot. It is true that the angle made by the incline with the axis of the tube in the latter instrument approaches more nearly to a right angle than the incline in complainant's speculum; nevertheless there is a pronounced 'incline;' and, moreover, Dr. Mudd testifies that one purpose of the 'incline' is to protect the mucous membrane from injury when the speculum is withdrawn. It should be further observed that complainant's specification does not make the angle at which the incline is set in his speculum an essential feature of the device. As described in his specification, the utility of the incline consists in preventing the 'impaction of the tumors,' etc., and in enabling the operator to withdraw the instrument without injury to the membranes. This is precisely the function of the incline in the speculum produced by Dr. Mudd, and apparently it was set at an angle which effectually accomplished that purpose. At all events, no complaint appears to have been made against that speculum on the ground that the incline failed to accomplish the purpose had in view. The Squire's speculum also shows an incline in the forward or closed end, in all respects like that in complainant's instrument; but the testimony in the case leaves it somewhat doubtful whether the 'incline' in Squire's speculum was placed therein shortly before or shortly after complainant claims to have invented it. For that reason the patent is not affected by the evidence offered by defendant in relation to the Squire's instrument.
 
 
 8
 '3. In view of what has been said it appears that plaintiff's right to relief depends on the second claim for the 'incline, * * * in combination with the tube, slot, and slide.' This claim is attacked on two grounds: First, that the combination, as a whole, was anticipated by Dr. Hodgen when he caused an incline in the form of a mirror to be set permanently in the forward end of the old 'Reed Speculum,' about the year 1876; and, second, that the combination is devoid of invention and patentable novelty. I shall concede that the evidence as to what Dr. Hodgen caused to be done with the Reed speculum 12 or 13 years since is, under the circumstances, not of that certain and convincing character which ought to be required to overturn the claims of a duly-issued patent. The second objection to the claim, however, is more formidable. The Reed speculum, before alluded to, shows 'the tube, slot, and slide' combined in a manner that does not differ essentially from the form in which the same elements are combined in complainant's combination. To these three elements the patentee added a fourth, the 'incline in the front end of the chamber,'—but the 'incline,' as before stated, was itself an old device, which had been used in specula such as was produced by Dr. Mudd. Furthermore, it was used in the old instruments for the same purpose that complainant professes to have invented it; that is to say, to avoid injuring protruding membranes when the speculum was withdrawn. Even if complainant had been the first to use the incline in tubular specula having closed ends, the device was a very obvious one, scarcely rising to the dignity of an invention, considering the function it performed, as is well illustrated by the account which the patentee gives of the manner in which the idea was conceived. He states that he first constructed his speculum as shown in the specification, with a tube, slot, and slide, but without an incline. When he made the first trial of the instrument he discovered the risk of injuring such membranes as happened to protrude through the slot, as others had discovered who made the Mudd instrument. Thereupon he employed a jeweler to solder a small piece of metal in the forward end of the chamber, so as to form an incline, and subsequently amended his specification by adding the third claim, which is substantially a claim for the incline as an independent device. But, regardless of the obvious nature of the improvement made by adding the incline, the court is of the opinion that the combination so formed was not patentable, because no new result or effect was produced by the united action of the old elements. To sustain a patent on a combination of old devices, it is well settled that a new result must be obtained, which is due to the joint and cooperating action of all the old elements. Either this must be accomplished, or a new machine of distinct character and function must be constructed. Pickering v. McCullough, 104 U. S. 310; Hailes v. Van Wormer, 20 Wall. 353; Double-Pointed Tack Co. v. Two Rivers Manuf'g Co, 9 Biss. 258, 3 Fed. Rep. 26; Machine Co. v. Young, 14 Blatchf. 46. If several old devices are so put together as to produce even a better machine or instrument than was formerly in use, but each of the old devices does what it had formerly done in the instrument or machine from which it was borrowed, and in the old way, without uniting with other old devices to perform any joint function, it seems that the combination is not patentable. Hailes v. Van Wormer, supra; Reckendorfer v. Faber, 92 U. S. 347. In the present case the incline, when placed in combination with the 'tube, slot, and slide,' acted precisely as it did when placed in the forward end of a slotted tube not provided with a slide. Its action was in no sense modified by the new relation in which it was placed, nor did it, in unison with the other elements of the combination. produce a distinctively new result. In accordance with these views the bill is dismissed.' J. C. Smith, for appellants.
 
 
 9
 Geo. H. Knight, for appellee.
 
 
 10
 Mr. Chief Justice FULLER.
 
 
 11
 Having reached the same conclusions as those expressed in the opinion of the circuit court, reported in 37 Fed. Rep. 92, we direct the decree to be affirmed.