P. H. MURPHY MANUF'G CO. v. EXCELSIOR CAR-ROOF CO.

(Circuit Court, E. D. Missouri, E. D.   October 19, 1895.)

No. 3,801.

1. PATENTS—INVENTION.
   The test of invention in all cases is whether the device or improvement is the product of an original conception of the patentee. It must involve something beyond what is obvious to persons skilled in the art to which it relates, and it must amount to something more than a mere carrying

forward or more extended application of an original idea of another. It must be new, as well as useful.

**2. SAME—EVIDENCE—EXTENSIVE USE.**

One who invokes the presumption claimed to arise where a patented article goes into extensive use, and supplants other devices, has the burden of showing the fact as to the article in question; and where the evidence as to the supplanting is not satisfactory, and it appears that complainant is engaged largely in manufacturing articles of a different design from that of the patent sued on, the presumption should not have much weight.

**3. SAME—CAR ROOFS.**

The Murphy patent, No. 414,069, for an improvement in car roofs consisting in the method of forming the joint between the plates, *held* void because of anticipation and for want of invention, in view of the prior state of the art.

This was a bill in equity by the P. H. Murphy Manufacturing Company against the Excelsior Car-Roof Company for alleged infringement of a patent for an improvement in car roofs.

Paul Bakewell, for complainant.

B. F. Rex, for defendant.

ADAMS, District Judge. This is an action for alleged infringement of letters patent of the United States, No. 414,069, granted to Peter H. Murphy, under date October 29, 1889, for improvement in car roofs. The substantial defenses are that the patent is void for want of novelty and patentable invention, and that the defendant has not infringed any of the claims of the patent. The Murphy patent is what is known as a "combination patent," and consists of devices for the manufacture of sheet-iron car roofs. Five specific claims appear in the patent, each one representing a certain alleged new and useful combination, and it is charged that the defendant has infringed each and all of these claims.

In order to understand the application of the devices embodied in these claims to practical use, it is necessary to presuppose the existence of the framework of an ordinary freight car with elevated ridge, and roofs declining slightly therefrom on each side to the eaves. If these declining roofs are covered with ordinary wood sheeting, the top of the car is ready for the metallic covering contemplated by complainant's patent.

The first claim of the patent is for a combination, consisting (1) of angle strips in shape substantially like ordinary inverted T rails, nailed down through the flat flanges, to the sheeting, and thus exposing several upright flanges extending equidistantly apart from the ridge or peak to the eaves of the car, and (2) metal plates so cut, in width, as to fill in these equidistant spaces, and, in length, extending from the ridge to the eaves on each side. These plates have one of their sides turned up to form an upright flange, which, in laying the roof, is placed up against, and of equal height with, the upright flange of the angle strip. The next adjacent plate is also turned up at the edge, and formed into an overlapping or inverted U-shaped flange, which, in laying the roof, is made to overlap the first-mentioned upright flange of the next adjacent plate, and the upright

flange of the angle strip against which it lies. In this way, by a succession of plates similarly formed, the one with the overlapping or inverted U-shaped flange is made to engage the upright flange of the one laid immediately before and adjacent to it, together with the upright flange of the angle strip against which it is laid; and thus the entire side of the roof of the car is covered, and each plate is interlocked with its predecessor so as to form a continuous water-tight roof. The angle strips being nailed to the sheeting by and through the two flat flanges, these nails are covered by the successive plates as they are laid, so that no nail heads are exposed; and the roof, when done, forms a covering which thoroughly protects the car from leakage. It is this combination of the upright flange of the angle strip with the upright flange of one of the adjacent plates lying against it, and both engaged or overlapped with the inverted U-shaped flange forming the edge of the next adjacent plate, whereby a standing water-tight joint is formed between the several plates running from the ridge or peak to the eaves, which is the subject of the first claim of complainant's patent.

The evidence shows, in my opinion, that there was nothing new in this combination at the date of the application for the Murphy patent. Evidence of the prior state of the art discloses that each and every element of this claim was not only in public use as a combination for years before, but that the substantial equivalent of this combination is found in several patents which antedate the application for the patent in controversy. The Naylor patent, No. 1,321, dated September 11, 1839, which was for an improvement in the manner of covering roofs of houses and other buildings with sheets of metal, etc.; the Morsell patent, No. 165,113, dated June 29, 1875, for an improvement in metallic roofing; the Hawthorne patent, No. 386,316, dated July 17, 1888, for new and useful improvements in roofing; the Wands patent, No. 302,453, dated July 22, 1884, for new and useful improvements in metal car roofs,—each and all fairly represent the essential features of the combination found in this first claim. For instance, in the Hawthorne patent the angle strips are substantially the same as in the Murphy patent, and are applied to the sheets in substantially the same way as the angle strips of the Murphy patent. The flanges of the intervening plates, it is true, are all upright; that is, one does not overlap the other forming the inverted U-shaped protecting cap, as in the Murphy patent, but there is a separate cap thrown over the angle strip, with the two upright flanges of the plates resting against its upright flange, very much after the principle employed by defendant in manufacturing its car roof under the Jennings patent, No. 446,780, dated February 17, 1891; and I quite agree with complainant's counsel in the reasons assigned by him, showing that the combination of the Jennings patent, in this particular, is the substantial equivalent of the combination under the first claim of the Murphy patent. Manifestly, this separate or disconnected cap serves no other purpose than would be served if it was made integral with one of the plates. By bolting this separate cap to one of the upright flanges of the Hawthorne plates, the overlapping flange of the Murphy patent is substantially

produced. If, therefore, the combination under the Jennings patent, forming the joint extending from the roof to the eaves, is an infringement of the Murphy patent, in suit, the combination under the prior Hawthorne patent, being the substantial equivalent of the combination under the Jennings patent, would clearly anticipate the Murphy patent in respect to the first claim thereof. "That which infringes if later would anticipate if earlier." Knapp v. Morss, 150 U. S. 228, 14 Sup. Ct. 81. The other patents antedating the Murphy patent above referred to, when analyzed, also involve the substantial elements and combinations of the first claim of the Murphy patent, and, in my opinion, demonstrate that Mr. Murphy presented no new idea to the world in his first claim.

The second claim is for a combination of the elements of the first claim, as already analyzed, with a like claim for forming a similar upright waterproof joint where the upright ends of the plates on one side of the roof join, at the ridge pole, the upper ends of the plates on the other side of the roof. There is therefore nothing new in this second claim, requiring further or additional consideration. It is simply a repetition of the first claim, applied to producing a joint at the ridge of the car, and is therefore void for want of novelty.

The third claim is for a combination of the elements of the first and second claims with the addition of a four-way cap to be fitted over the openings necessarily produced where the upright joint mentioned in the first claim, extending from the ridge to the eaves, meets or intersects the upright joint mentioned in the second claim, extending along the ridge. The necessity and function of this cap will be readily seen by an inspection of the following diagram, showing the openings to be covered:

The figures 3–5 show the angle strip running from the ridge to the eaves; 6 shows the sheet with its upright flange, 7, lying against one side of the angle strip; 6–10 shows the next adjacent sheet, with its inverted U-shaped flange, 10, overlapping flange 7 and the angle strip,—making altogether the upright joint extending from the ridge to the eaves, constituting the combination under the first claim of the patent. The figures 3–5, in combination with 11 and

8, show the transverse upright joint extending along the ridge of the car, which, with the first-mentioned combination, make the combination under the second claim.    At the intersection of these two joints appears an opening, which, of necessity, must be covered in order to produce a water-tight roof.    Mr. Murphy placed over this opening a four-way cap, represented by the figure 16 in the diagram following:

And it is this combination of the elements of claims 1 and 2 with the cap which constitutes the third claim of the patent.

In making this third combination, Mr. Murphy had before him, and, in contemplation of law, is presumed to have been familiar with, all prior patents and all information on the subject known to or used by the public.

The test of invention, within the meaning of the patent law, in all cases, is whether the device or improvement is the product of an original conception of the patentee.    It must involve something beyond what is obvious to persons skilled in the art to which it relates, and it must amount to something more than a mere carrying forward or more extended application of an original idea of another.    It must be, under the statute, new as well as useful. Pearce v. Mulford, 102 U. S. 112; Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, and cases cited.    It is recognized that the patent sued on is what is known as a "combination patent"; and, even though all the separate elements are old or well known, there might be patentable invention in the combination, provided a new and useful result is obtained.    Thomson v. Bank, 53 Fed. 250.[1]    But the question still remains whether the combination is new, and therefore patentable, or whether, on the other hand, it is an aggregation of old elements producing no new result, and therefore not patentable.    Even if the aggregate result produces a better structure than was ever before produced, yet, if no new result is produced, it is not patentable.    Reckendorfer v. Faber, 92 U. S. 347; Brinkerhoff v. Aloe, 37 Fed. 92, and cases cited.

[1] 3 C. C. A. 518.

Applying these principles and tests to the case before the court, it seems that this third claim, which practically includes all of complainant's invention, must fall.   I find in it no original conception or no substantially new result.   The addition of the cap to cover openings at the intersection of the joint is nothing new.   It is found in several patents antedating Murphy's, for improvements in metallic ceilings,—notably, the Adler patent, granted June 19, 1875; the Northrup patent, granted November 24, 1885; the Thuner patent, granted January 24, 1888; and the Mesker patent, granted April 19, 1887.   With the knowledge of these patents, and the use of a four-way metallic cap to cover similar openings in the intersections of metallic ceiling joints, it seems to me that an ordinary head workman and skilled mechanic would naturally and almost spontaneously turn to a similar device to cover similar openings anywhere and for any purpose.   If such is the case, no patentable invention is involved.   Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225; Aron v. Manhattan Ry. Co., 132 U. S. 84, 10 Sup. Ct. 24.

The Wands patent, dated July 22, 1884, for new and useful improvements in car roofs, in my opinion, presents every element, or the substantial equivalent of every element, of this third claim of the Murphy patent.   The angle strips, although made of wood instead of metal, serve the very purpose, and practically in the same way, as Murphy's angle strips of iron.   The plates and their attachments to the angle strips, both across the sides of the roof and along the ridge, form substantially the same upright water-tight joints, intersecting each other, and exposing openings along the ridge, as appear in the Murphy patent.   The continuous metallic sheet extending along the roof, and covering these exposed openings, while not a perfect four-way cap, is a device very suggestive thereof.   The skill of an ordinary foreman or head workman, familiar with the Wands continuous cap, could hardly fail to see the possible advantage of cutting this continuous cap, and folding it closely down over the four intersecting joints.   This Wands patent, taken in connection with the testimony showing prior use of the four-way cap to cover such exposed openings, demonstrates that there was nothing new in this combination.   To say nothing of the testimony showing use of this cap in similar combinations at remote periods as to which the testimony of witnesses might be unreliable, it stands undisputed that a similar four-way cap had been in use to cover intersecting upright metallic joints on the court-house in the city of St. Louis, for many years prior to the application for the Murphy patent.

In the light of all the evidence before the court bearing upon the prior state of the art and prior use, the conclusion, in my opinion, is irresistible that Murphy discovered nothing new either in the elements employed or in the combination described in the third claim.   The details of construction, like horizontal rivets used instead of perpendicular screws to attach the upright flanges of the plates to the angle strips, or the horizontal rivets used instead of solder to attach the caps to the upright joints, seem to me nothing

but an obvious mechanical contrivance, which any ordinarily skillful mechanic would apply to accomplish the required purpose; and, even if these details were the subject-matter of distinct claim, I could not, under the authorities referred to, hold that they or either of them, separately considered, or considered in connection with the alleged combinations of either claim, involve patentable invention. For the foregoing reasons, the third claim must be held void for want of novelty and patentable invention.

The fourth claim is practically the same as the second, and requires no additional consideration.

The fifth claim is the same as the third, with the addition of a screw stud imbedded in the framework of the roof of the car, passing through the corner caps hereinbefore referred to, for the purpose of fastening down the walking board running along the top of the car. The disposition of the third claim practically disposes of this fifth claim. The addition of a bolt to be used to attach the running board to the roof is so manifest an expedient already practically embodied in the Wands patent as to negative the possibility of novelty or patentable invention in the use of it.

Plaintiff's counsel invokes a presumption of novelty in the Murphy roof, from the alleged fact that it went into general use, and supplanted other roofs. If such were the fact, the presumption suggested would arise, and, in case of doubt on the issue of patentable novelty, it might turn the scale; but, in view of the fact that many other considerations besides novelty of the article are involved in its popularity or salability, these incidents become a very unsafe criterion. Duer v. Lock Co., 149 U. S. 216, 13 Sup. Ct. 850. The evidence, however, does not satisfy me that the Murphy roof constructed under the patent in suit ever went into general use, or supplanted others in use before it was invented. The burden of showing this rests upon the complainant, who is invoking the presumption. The evidence shows that about 10,000 of these Murphy roofs have been made since the date of the patent. There is no evidence of their supplanting other roofs in the market. On the contrary, there is very substantial evidence showing that complainant is and has been for some time manufacturing a different roof. Mr. Bluedorn, a director in complainant corporation, testifying for his company, makes it perfectly certain, not only from what he says, but from what he declines or omits to say, that the complainant corporation is engaged largely in manufacturing car roofs of a design different from the design of the Murphy patent. Under such circumstances, the presumption invoked by complainant ought not to have much weight, if any.

Disposing of this case on the ground of want of novelty and patentable invention in the several claims of the Murphy patent, it is unnecessary to say anything concerning the defense of noninfringement. I may, however, briefly add that the evidence of the prior state of the art, which has brought me to the conclusion above indicated, would, in my opinion, force the court to a narrow and limited construction of the claims of the Murphy patent; and, if such

construction should be given them, the defendant's roof manufactured under the Jennings patent would not be an infringement of the Murphy patent in suit, or any of its claims. The bill must be dismissed.