ANTON v. GRIER BROS. CO.

(Circuit Court of Appeals, Third Circuit.  March 23, 1911.)

No. 78 (1,416).

1. PATENTS (§ 26*)—INVENTION—COMBINATION OF OLD ELEMENTS.

To sustain a patent with a combination of old elements, a new result must be obtained, which is due to the joint and co-operating action of all of the old elements.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

2. PATENTS (§ 328*)—INVENTION—MINER'S LAMP.

The Anton patent, No. 756,151, for a miner's lamp, claim 2, is void, as covering a mere aggregation of old elements, which do not co-operate to produce a new result.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

Suit in equity by John Anton against the Grier Bros. Company. Decree for defendant, and complainant appeals. Affirmed.

Floyd N. Barber and Edward A. Lawrence, for appellant.
Thomas S. Brown and Joseph M. Nesbit, for appellee.

Before GRAY and LANNING, Circuit Judges, and HOLLAND, District Judge.

HOLLAND, District Judge. This is an appeal from a decree of the Circuit Court for the Western District of Pennsylvania, entered March 4, 1910, dismissing the bill of complaint, on the ground that claim 2 of the patent in suit, No. 756,151, issued March 29, 1904, to John Anton, is for an unpatentable aggregation of old elements, and hence void and of no effect.

Claim 2 of the patent in suit is as follows:

"A miner's lamp, consisting of a body having a spout, a guard secured to the spout and body and extending partly the length of the former and partially surrounding the same, and a spreader of the ring-like cup-shape form received over and secured to the spout."

The art to which the patent in suit belongs is that of miners' lamps, which are small metal bodies or receptacles, adapted to contain oil and other inflammable liquid, and provided with a spout, in which is placed a wick of tow or other similar material extending from the oil reservoir or body to the open end of the spout, where the wick is lighted. In the types of lamps involved in this suit, the spout is made by bending up a strip of tin or other thin metal and soldering the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

longitudinal seam formed by the overlapping edges of the tin. The base of the spout is then soldered around an aperture in the side of the lamp body.

This is the old-style, single-spout lamp, without a spreader or ring at the end of the spout. This was unsatisfactory, because, first, that as the lamp was not equipped with a wick raiser, such, for instance, as is used on household lamps, it was necessary, in order to secure additional extension of the wick, as it was consumed, to strike the spout of the lamp against any convenient object, such as a track rail, a coal car, pick, etc., thus jarring the wick along the spout, and this resulted in battering and denting the spout, thereby jamming the wick in the spout, preventing its being raised for further lighting purposes; and, second, when the lamp was moved against a current of air, or facing a draft, the flame from the plain spout tended to blow back and run along the spout, melting the longitudinal seam, so that it opened and the oil leaked out, and frequently this flame running down the spout reached the crotch of the spout at the lamp and melted the solder, which caused the lamp to leak and the spout to drop off, thus disabling the lamp.

The complainant's patent is for an improvement on this old miner's lamp, and it is provided with a double spout; that is to say, a guard or reinforcing plate, laterally curved to fit snugly against the lower portion of the spout, and firmly attached to both the spout and the lamp body. This guard is intended to receive the impact of the blow by which the wick is driven up the spout to trim the lamp. As a means of preventing the flame from blowing or licking back and down the spout, thereby melting the longitudinal seam, and frequently melting the spout from the body of the lamp at the crotch, a spreader was placed upon the top or end of the spout. It also prevented the oil from dropping from the lamp on the miner's hat or in his face.

The patent is for a combination, and it is insisted by the defendant that the elements combined in the complainant's lamp are both old. Upon an examination of the prior art it is found that the guard which is used by the complainant was old and in public use as early as 1865 in miners' lamps which were then manufactured and sold; and we also find from the evidence that spreaders at the top or end of the spout of such lamp were old and in public use as early as July, 1901, at which date they were made, used, and sold by Grier.

Without further discussion of this particular question, it is sufficient to say that the court is of the opinion that the evidence offered by the defendant to the effect that these spreaders were sold by Grier in July, 1901, is sufficient, and warranted the court below in concluding they were made and sold upon that date, so that we have the two elements, to wit, the guard for the spout and the spreader at the top, both found in the art long prior to the complainant's patent.

The complainant did no more than add these two features to the old miner's lamp. The combination, it is true, resulted in making it a more durable and desirable lamp; but there was no new result produced from the combination. The guard element and the spreader element each performed the same function when used on one and the

same lamp as when used on separate lamps. In aggregating the old elements there was produced no 'new result as thus assembled. Each performs exactly the same duty it performs when used alone, and these advantages or functions of the guard and spreader are such that it is absolutely impossible for them to co-operate in any patentable sense when used on one and the same lamp. The guard is placed there for the purpose of preventing the spout from being battered or dented in knocking it to raise the wick. The function of the spreader is to prevent the flame from licking back and melting the seam and crotch of the spout, and preventing the oil from dripping down. Now, each of these elements, to wit, the guard and the spreader, will perform that same function, whether found on the same lamp or on different lamps, and there is no new result; hence the combination discloses no patentable 'novelty, and the claim is invalid.

This has been ruled so often that it is unnecessary to do more than refer to a few of the leading cases which sustain the proposition. To sustain a patent with a combination of old elements, it is well settled that a new result must be obtained, which is due to the joint and co-operating action of all the old elements. Either this must be accomplished, or a new machine of distinct character and function must be constructed. If several old devices are so put together to produce even a better machine or instrument than was formerly in use, but each of the old devices does what it had formerly done in the instrument or machine from which it was borrowed, and in the old way, without uniting with other old devices to perform any joint function, it seems that the combination is not patentable. Brinkerhoff v. Aloe, 146 U. S. 515, 13 Sup. Ct. 221, 36 L. Ed. 1068; Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749; Reckensdorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719; Hailes v. Van Wormer, 87 U. S. 353, 22 L. Ed. 241; Specialty Mfg. Co. v. Fenton Mfg. Co., 174 U. S. 492, 19 Sup. Ct. 641, 43 L. Ed. 1058.

Notwithstanding the fact that the aggregation of these old improvements in Anton's lamp made a more desirable lamp than those previously sold, there was no patentable combination effected by him, and the bill was properly dismissed.

The decree of the court below is affirmed.