## CENTRAL HANOVER BANK & TRUST CO. et al. v. SETLOW.

### No. 2010.

District Court, D. Connecticut.
April 22, 1932.

William G. McKnight and William T. Hedlund, both of New York City, and Henry F. Parmelee, of New Haven, Conn., for plaintiffs.

Drury W. Cooper, of New York City, Carlton Hill, of Chicago, Ill., and Thomas J. Byrne, of New York City, for defendant.

THOMAS, District Judge.

This is the usual bill in equity charging the defendant with infringement of letters patent No. 1,520,936, granted to James H. Dennedy on December 30, 1924, on an application filed December 10, 1921. The invention is alleged by the patentee to be for a new improvement in artificial refrigerating systems.

The Central Hanover Bank & Trust Company and Frederic J. Fuller are the joint and several owners of the legal title, while Servel, Incorporated, is the owner of the equitable title to the patent in suit. The defendant, Leo Setlow, doing business in New Haven in this district, under the name and style of Ideal Plumbing & Heating Company, is engaged in the sale, in a small way, of "Norge" refrigerators manufactured by the Norge Corporation of Detroit, Mich.

Claims 3, 4, 5, 7, 8, 9, 10, 11, 12, and 13 are in suit. Claim 5 is typical. It reads:

"5. The combination in an artificial refrigerating system of a refrigerant circuit including a low pressure side and a high pressure side, a compressor, means for maintaining a constant volume of liquid refrigerant in the low pressure side, comprising a float valve actuated by fluctuation in the level of liquid refrigerant in one of said sides, means responsive to pressure variations in the low pressure side due to temperature change thereof for controlling said compressor, and a body to be cooled, absorption of heat in varying amount by the low pressure side being substantially confined to heat from said body."

Before taking up the questions of validity and infringement, we will first dispose of a question of procedure raised by the defendant's objection to certain evidence and testimony offered on behalf of the plaintiffs in rebuttal of defendant's testimony. On their direct case the plaintiffs introduced in evidence the patent in suit, gave proof of infringement by the defendant, and then

rested. After the expert testimony and other evidence was presented in behalf of the defendant in support of the allegations of the answer as to validity and infringement, and the defendant had rested, the plaintiffs then offered testimony to rebut all the evidence offered by the defendant. Defendant objected to the plaintiffs' rebuttal, but the objection was overruled and an exception to the ruling was noted. There is nothing wrong with this practice. A plaintiff has a right to either set forth his whole case or only a prima facie case. A plaintiff may, if he chooses, offer the patent in suit in evidence and stand upon the usual presumptions that flow from the grant of the patent and produce and offer in evidence the alleged infringing device and rest, as was done in the case at bar. If the defendant, as here, then introduces expert testimony, the prior art, and publications for the purpose of limiting the alleged invention, it is proper then for the plaintiff to rebut the prima facie force of the expert testimony, the prior art, and publications. The expert testimony produced on rebuttal by the plaintiffs and the testimony in rebuttal of defendant's showing is proper, and the defendant's claim that such testimony should have been introduced on direct cannot prevail. See American Linoleum Mfg. Co. v. Nairn Linoleum Co. (C. C.) 44 F. 755; Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Hardinge Conical Mill Co. v. Abbe Engineering Co. (C. C. A.) 195 F. 936; Jost v. Borden Stove Co. (D. C.) 262 F. 163; American Bank Protection Co. v. City Nat. Bank (C. C.) 181 F. 375; Hutter v. De Q. Bottle Stopper Co. (C. C.) 119 F. 190; Blackledge v. J. M. Shock Absorber Co. (D. C.) 213 F. 478.

The subject-matter of the patent in suit is a refrigerating system of the compression type having a high pressure side and a low pressure side. The invention relates, as the patentee asserts, "to artificial refrigerating systems in which a refrigerant body such as sulphur dioxide, methyl chloride or similar chemical is compressed and liquified and then cooled and allowed to expand in a coil within a storage compartment, brine tank or the like, and the particular feature of this invention is in the provision of means to control the temperature of the storage compartment or body to be cooled through variation in pressure of the expansion side of the system."

The refrigerating cycle employed in the construction described in the patent in suit was old and well known many years prior to the date of the application which resulted in the patent in suit. This cycle employs a compressor in which a gas is compressed, a condenser in which the high pressure gas is liquified, an expansion valve through which the high pressure liquid refrigerant passes from the high pressure side to the evaporator coils on the low pressure side of the system and a line leading from the evaporator coils, the suction line, back to the compressor. The compressor, when operated, draws or sucks the gas through the line from the evaporator. It was also old and well known many years prior to the application which resulted in the patent in suit to employ a thermostat in the system to maintain the temperature in the box, storage compartment, or body to be cooled between certain high and low limits. The function of the thermostat is to open and close the electric circuit of the motor which drives the compressor.

In the device described and claimed in the patent in suit, the inventor substitutes for the thermostat above mentioned a controlling means for the box temperatures, which means is responsive to variations of pressure within the evaporator coil. This controlling means is based upon the well-known pressure-temperature law, according to which, in any closed chamber or confined space (as in the evaporator coil of a refrigerating system) containing a body of liquid refrigerant subject to the pressure of just the refrigerant vapor, there is a definite relationship between the boiling temperatures of that body of refrigerant liquid and the pressure of the refrigerant vapor above the liquid. This control means is connected into and is responsive to the pressure of the low pressure side and controls the starting and stopping of the compressor, so that the pressure and hence the temperature of the low pressure side is maintained within predetermined limits with the result that the temperature of the refrigerator box is also maintained within predetermined limits. The patentee employs a valve between the high and low pressure sides of the system, corresponding to the expansion valve to which reference was made supra, in order to control the quantity of liquid in the evaporator, and more particularly to maintain a constant quantity of refrigerant in the expansion side of the system.

The invention is diagrammatically illustrated in the drawings of the patent in suit and comprises an evaporator or coil 5 with-

in a box 2, or the compartment to be refrig-
erated:

This coil contains a refrigerant liquid, such
as sulphur dioxide, which boils or changes

## J. H. DENNEDY

ARTIFICIAL REFRIGERATING SYSTEM

Filed Dec. 10, 1921

*INVENTOR.*

*James H. Dennedy,*

BY

*Charles E. Wiener*

ATTORNEY.

from liquid to vapor. When the pressure of the liquid in the coil is reduced, the liquid boils or vaporizes and absorbs heat. The liquid within the evaporator 5 is first chilled, due to evaporation, and because of the decrease of temperature of the liquid, heat from the compartment 2 will flow through the metal wall of the evaporator. This removal of heat from the compartment chills the interior of the box. Refrigeration is thus produced. The discharge end of the evaporator 5 is connected by the suction pipe 4 to the inlet of the compressor. The outlet of the compressor is connected with the condenser (also a coil) located in the base of the compressor, which, upon being cooled with water or a blast of air, converts the high pressure vapor, forced by the compressor into the condenser, into high pressure liquid. Between the outlet of the condenser and the evaporator is a valve 8 which divides the high pressure side and the low pressure side of the circuit; the condenser being on the high pressure side and the evaporator on the low pressure side. The valve is controlled by a float on the high pressure side. This float is shown at 12 and is disposed within a chamber 9 which receives liquid from the condenser. The float valve operates so that the liquid refrigerant is automatically transferred from the high to the low pressure side practically as fast as it accumulates, so that a constant quantity is maintained in the evaporator. Upon starting the compressor, suction is produced on the body of liquid refrigerant in the evaporator and its pressure is lowered and evaporation and boiling takes place. This evaporation cools the liquid. As the temperature decreases, the pressure decreases in a fixed relation. The compressor sucks the evaporated refrigerant out of the evaporator and forces it to high pressure, so that it can be condensed back to liquid at a higher temperature than that of the evaporator. The float operated valve permits liquid to flow back to the low pressure evaporator. The cycle is thus completed and repeated over and over again. The motor is started and stopped by means of a mechanism indicated generally at 6 on the drawings. The mechanism 6 comprises an electric switch 23–24 in the electric circuit of a motor which actuates the compressor and also includes an expansible member 16 which is inclosed in a casing 15, so that a sealed chamber 19 is formed between the expansible member 16 and the casing 15. The chamber 19 is connected by a pipe 14 with the low pressure side 4 and the member 16 is, therefore, subject to variations in pressure in the low pressure side and the evaporator 5. The action of the suction line pressure on the expansible member 16 is counteracted by a spring 20. Upon an increase of pressure in the low side and the evaporator to a predetermined limit, the switch blade 23 makes contact with the contact member 24 closing the electric circuit of the motor and starting the compressor into operation. Upon a decrease in pressure in the low side to a predetermined limit, sufficient to allow the spring 20 to act, the switch is opened which breaks the electric circuit and the compressor is stopped.

It is alleged by the patentee that prior to his invention no one realized that pressure control alone would be sufficient to control box temperature, and no one realized that to control box temperature another factor was essential, to wit, the control of the quantity of liquid in the evaporator.

The defenses against the patent in suit are:

1. Invalidity in view of the prior art.

2. That the defendant's single unit system does not infringe.

3. That the Dennedy apparatus is not capable of use as a multiple system and hence cannot be infringed by the multiple system of the defendant.

4. That the Dennedy disclosure does not support the claims of the patent in suit.

5. That the claims of the Dennedy patent are for mere aggregations of elements and not for patentable combinations.

The defendant relies upon a number of prior patents to prove invalidity. The refrigerating cycle disclosed in the patent in suit is clearly described in the patent to Facer, No. 442026, issued in 1890. In this patent there is shown a compressor, a condenser, a receiver, an expansion valve, evaporator coils, and a suction line from the evaporator coil back to the compressor. Additionally, the Facer patent describes a mechanism whereby the pressure of gas within the evaporator coils is automatically controlled by the starting and stopping of the compressor. This device is in the form of an elastic diaphragm so arranged that it will expand or contract under the influence of the gas within the evaporator coils. The diaphragm co-operates with devices which are operated by the movement of such diaphragm and by which the operative connection between the compressor actuating power mechanism is made and broken auto-

matically. A certain high pressure in the condenser coils results in starting the system into operation, and a predetermined low pressure causes cessation of operation of the compressor. As in the device described in the patent in suit, the pressure controlled device is adjustable to permit the same to be set to operate at different pressures. Inasmuch as there is a fixed relationship between the pressure and temperature in the evaporation coils, it is obvious that in the Facer apparatus the means which controls the operation of the compressor is responsive to pressure variations in the low pressure side due to temperature changes.

It is argued by the plaintiffs that the expansion valve of the Facer patent does not maintain, at all times, a constant quantity of liquid refrigerant in the evaporator. Defendant's answer to this claim is that the patent to Marshall, No. 1,425,265, granted August 8, 1922, on an application filed May 7, 1920, which is prior to the alleged date of conception by Dennedy, describes a float controlled expansion valve which maintains a constant level of liquid refrigerant in the evaporator coils. This expansion valve is on the low pressure side of the system, while in the Dennedy patent the corresponding element is on the high pressure side. The defendant avers that the Dennedy high pressure side float controlled valve does not and cannot maintain a constant level or a substantially constant level of the refrigerant in the evaporator coils while the corresponding element of the Marshall structure does. With this contention I do not agree, as it seems to me to be immaterial on which side of the system the valve controlling means is located; it being in the closed circuit of the system. This question is quite immaterial as far as the ultimate conclusions here reached are concerned.

The theory advanced by counsel for plaintiffs seems to be that no one before Dennedy realized that pressure control alone would not suffice to control box temperature and that it remained for Dennedy to discover that to control box temperature another factor was essential, to wit, the control of the quantity of liquid in the evaporator, and that he brought about a new combination of elements functioning upon a new principle to produce a new result. On the other hand, the defendant asserts that when Dennedy combined, for instance, the Facer and Marshall constructions, that is to say, when he substituted for the expansion valve of Facer the float controlled valve of Marshall,

he brought about an unpatentable aggregation of old elements; each element performing its function in its own way without coacting with or modifying the function or operation of the other elements of the alleged combination.

In determining whether or not the combination of elements in the case at bar is patentable we must be governed by two well defined principles of law:

First. Where each element in the combination performs its function unaffected and unmodified by the action of the other, if there is no coaction of these elements with one another, and if their combined result is the result of each element performing its function in its own way unmodified by the others, each element contributing its share to the work, then such combination is a mere aggregation and is unpatentable. Richards v. Chase Elevator Co., 158 U. S. 299, 15 S. Ct. 831, 39 L. Ed. 991; Brinkerhoff v. Aloe, 146 U. S. 515, 13 S. Ct. 221, 36 L. Ed. 1068; Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719; Everlasting Furniture Brace Co. v. Wittliff (C. C. A.) 44 F.(2d) 129; Angier v. Nehring Electrical Works (C. C. A.) 45 F.(2d) 354.

Second. It is not requisite to the patentability of a combination of old mechanical elements that each element should, in addition to performing its own function, modify the function performed by one or more of the other elements of the combination. It is sufficient if the combination of the old elements is new, and if the combined elements are capable of producing a novel and useful result or an old result in a more facile, economical, or efficient way. New York Scaffolding Co. v. Whitney (C. C. A.) 224 F. 452.

The individual elements of claim 5 are: (1) A refrigerant circuit including a low pressure side and a high pressure side; (2) a compressor; (3) means for maintaining a constant volume of liquid refrigerant in the low pressure side, comprising a float valve actuated by fluctuation in the level of liquid in one of said sides; (4) means responsive to pressure variation in the low pressure side due to temperature change thereof for controlling said compressor; and (5) a body to be cooled, absorption of heat in varying amount by the low pressure side being substantially confined to heat from said body.

All of these elements were old in the art at the time of filing the application for

the patent in suit as appears from the discussion of the Facer and Marshall patents. Elements 1, 2, 4, and 5 function in all respects the same in the structure described and claimed in the patent in suit as they do in that of the Facer patent. Element 3, on the other hand, functions in the structure of the Dennedy patent in suit in all respects the same as it does in that of the Marshall patent, and I am unable to observe any new result whatever by virtue of the combination of elements. Each of the elements of claim 5 occupies the same relative position and performs the same function in the device of the patent in suit as it does in the anticipatory device in which it is originally found. Furthermore, the elements of claim 5 perform no other functions, either separately or in conjunction with any other element. The combination of elements in their co-relation in the patent in suit produces no different force or effect or result from the sum of that which is produced by their separate parts, and such new force or effect, or result seems to be essential to the patentability of the invention described in the Dennedy patent in suit. Reckendorfer v. Faber, supra; Pelton Water Wheel Co. v. Doble (C. C. A.) 190 F. 760.

I am not unmindful of the assertion of the plaintiff that to control box temperatures the control of the quantity of the liquid in the evaporator is essential. Such combination is clearly disclosed in the prior art patents when read by those versed in the art. I conclude, therefore, that the device in suit is a mere aggregation of old elements and hence, unpatentable. In view of this conclusion it seems unnecessary to pass upon the other questions presented. On the other hand, it may be useful to pass on the remaining issues.

I find that defendant's single unit system comes within each and every one of the claims in suit, so that, if these claims were valid, they would be infringed by the defendant. I also decide that the Dennedy apparatus is capable of use in a multiple system, because it is only necessary to provide each unit with a separate liquid refrigerant level maintaining float control valve. I further find that the Dennedy disclosure does support the claims of the patent in suit because it is clear from the patent that the float control valve does maintain the level of the liquid within the evaporator coils and that such float control valve may be disposed either in the high pressure side or in the low pressure side of the system. As a matter of fact claim 5 specifies that the float valve may be "in one of said sides." The drawings of the patent in suit are of diagrammatical nature and support the disclosure when read in the light of the specification.

For the reasons given the bill is dismissed, with costs to abide the event.

Submit decree accordingly.