LittletoN, Judge,
delivered the opinion of the court:
Upon the facts established by the record, which have been set forth in detail in the findings and need not be repeated here, we are of opinion that the patent is invalid for lack of invention in that it involved no more than mechanical skill.
Plaintiff devotes considerable discussion to the proposition that the synchronization of machine guns for aircraft firing was a difficult and delicate problem, the solution of which was a commendable accomplishment. This problem, however, had been successfully mastered by Constantinesco in the development of his synchronizing gears, which had been successfully adapted to and used on the Vickers machine gun used by the British, French, and American armies during tlie war long prior to the date of the patent in suit. Swebilius was well acquainted with that apparatus and the manner in which it operated in conjunction with the Vickers machine gun. All that remained to be done when Swe-bilius, in collaboration with others as set forth in finding 12, first gave attention to the matter was to adapt the gears to the Browning machine gun. The Browning was an automatic machine gun and was equipped with all the elements or parts required in an aircraft machine gun except the means of transmitting the impulses of the trigger motor of the C. C. synchronizing gears to the sear that held the firing pin in a retracted position so as to depress the sear, thereby releasing the firing pin. This was accomplished by the placing of the sear slide 17, as shown in figs. 1, 2, and 4 of the patent, finding 20, in the firing mechanism of the Browning aircraft machine gun, the synchronizing gears of which were placed on the side of the Browning gun instead of at the rear' as had been done in the case of the Vickers aircraft machine gun. The function of this slide and its relation to other members of the gears and breech *43 bolt are explained in detail in the findings, particularly findings 14 and 20, and need not be repeated here. The purpose of the slide 17, figs. 2 and 4, was to transmit impulses from the synchronizing gears to the sear 11, as shown in fig. 1, which, in turn, controlled the firing pin which primed or fired the cartridge. The synchronizing-gears so controlled the time of firing that the bullet from the gun would always pass between the blades of the airplane propeller.
The use of the slides, or bars, in machine guns for the purpose of transmitting impulses from the trigger mechanism to the sear which controlled the firing pin was well known long prior to the date of the Swebilius patent. Such a feature was an element in all machine guns as shown by prior patents in the art, some of which used a pivoted sear and others a slide. The British patent, ^14047, to Maxim discloses the details of the firing mechanism of a machine gun. It shows a reciprocating breech bolt, such as is shown by the patent in suit, having a pivoted sear and a slide, both mounted on the breech bolt. One end of the slide has a cammed surface (finding 25). The structure shown in the Maxim patent is callable of being successfully synchronized for aircraft use by the substitution of the trigger motor of a synchronizing gear in place of a hand trigger. A number of machine guns embodying the structure shown in the Maxim patent *were built and used by the Imperial German Government for synchronized firing from aircraft (finding 26).
The British patent, 5940, to Enever in 1915 shows a firing mechanism with a reciprocating breech bolt having a vertical sliding sear (finding 27).
United States patent 690739, issued to Kjellman in 1902, likewise disclosed a firing mechanism comprising a vertical sliding sear (finding 29); likewise U. S. patent 788432 to Schneider in 1905 and XJ. S. patent 1143470 to Whiting in 1915 each disclosed a sliding sear to act upon the sear that controlled the firing pin.
An examination of the prior art shows that in a number of earlier structures both the sear and the slide were mounted on the breech bolt, while in others one of these elements was *44 mounted on the breech bolt, and the other was mounted on the frame of the gun. Likewise some of the earlier sears were pivoted structures, while others were sliding or reciprocating structures; in all respects the equivalent at least of the slide involved in the patent in suit. All of these alternative constructions formed a part of the prior art, and we think there was no novelty in selecting any one of them in preference to the other.
Inclined cam surfaces, such as are disclosed by 15 and 17a of fig. 4 of the patent in suit, finding 20, for transmitting motion in one direction to motion in a direction at an angle thereto, were used extensively in various mechanical arts as well as in the gun-making art prior to the date of the patent in suit. This expedient was within the knowledge of a mechanic skilled in the art at the time of the application for the patent in suit (finding SO).
From what has been said above, we think the device, which the patent in suit purports to cover, is not a patentable novelty and that this conclusion is clearly sustained by the authorities. In Mills v. United States, 75 C. Cls. 256, 276, this court said:
Invention results from "the use of the creative mental faculty and must involve original thought or discovery, in contradistinction to the mechanical skill of the mechanic or artisan in selecting, combining, or rearranging the ideas of others into a more useful form.
In Curtiss, et al., v. United States, 75 C. Cls. 286, 321, this court said:
The difference between invention and the exercise of mechanical skill is not always easily discernible. Invention concededly involves the creative faculty, an exercise of the mental processes to evolve some original thought or discovery. Mechanical skill, at least as to one manifestation, consists in part at least of taking from the art elements that are old, whose inherent qualities are well known and by a suggestive combination, itself familiar, rearrange and relocate them so as to produce a more useful form.
See, also, Newcomb, David Co., Inc., v. R. C. Mahon Co., 59 Fed. (2d) 899, 901, in which the court stated that—
*45 * * * the inventor must have done more than make a judicious selection from the devices of the prior art * * *. This is but the exercise of the mechanical ability reasonably to be expected in the development of the art, * * *.
Swebilius, the patentee, did not testify in the case and the only information we have concerning his work in adapting the C. C. synchronizing gears to the Browning machine gun, as a result of which the application of the patent in suit was filed, is that, insofar as the patent in suit is concerned, he had the assistance of numerous U. S. Army officers in the development of the device covered by the patent, together with material, blue prints, designs, and experimental data of the Ordnance Department of the U. S. Army, all of which was placed at his disposal.
What has been said above applies to all of the claims of the patent in suit, but a word might be said with reference to the broad claims 22 to 28, inclusive, covering a basic combination of a machine gun with synchronizing gears. The original claims of the patent application were first rejected by the patent examiner on prior art. The applicant then sought to distinguish the references of the examiner (which references did not include the British patent to Maxim), by pointing out that in his structure both the sear which controlled the release of the firing pin and the slide that actuated the sear, causing the release of the firing pin, were mounted on the breech bolt, while in the art cited by the examiner the scar alone was mounted on the breech bolt and the slide was carried on the framework of the gun. XJpon that basis the application was allowed August 18, 1920 (finding 11); but, when these claims were under consideration, the patent examiner apparently did not know and was not informed that the Browning machine gun for use on the ground and operated by a hand trigger, theretofore delivered to the Marlin Rockwell plant for adaptation to aircraft use and theretofore studied by Swebilius before he conceived his alleged invention and filed his application, had in fact both a slide and a sear mounted on the breech bolt. After the application was allowed in 1920 the applicant failed to pay the final fee within the prescribed time *46 and the application lapsed. More than a year later The Marlin Firearms Corporation, the plaintiff herein, filed a petition as assignee of the patent to renew the original application; thereupon the examiner cited the British patent to Maxim to which no reference had been previously made and which carried both the sear and the slide on the breech bolt.
Plaintiff sought to distinguish the Maxim patent on the ground that the latter used a pivoted sear while the patent application disclosed a sliding sear. In addition to the claims of the application as originally allowed, plaintiff, by amendment, added several new broad combination claims, nos. 22 to 28, inclusive. Thereafter the claims disclosed in the patent in suit were allowed and the patent in question issued April 3, 1923. During this consideration the patent examiner, obviously, it would seem, did not know and was not informed that the Browning machine gun of the ground type had a sliding sear and a slide both mounted on the breech bolt; to that extent, the very elements which the applicant claimed justified the allowance of the patent were found in a structure that had been in public use, and which had been delivered by the Government to the Marlin Rockwell Corporation, the plaintiff’s predecessor, for modification to adapt it to synchronized firing.
The elements of the broad combination claims 22 to 28, inclusive, were either found in the Maxim patent which was successfully synchronized for aircraft firing by the substitution of the trigger motor of a synchronizing gear in place of a hand trigger, and also in the Vickers aircraft machine gun, or in the various mechanical and the gun-making arts (findings 6, 7, and 30). The Vickers machine gun was delivered to and studied by Swebilius prior to the date of his alleged invention.
This conclusion may be illustrated by an analysis of claim 22, which is typical of the combination claims. The first element mentioned is an automatic gun, that was old; the second is “a receiver”, which was old; the third, “a breech bolt reciprocatively mounted therein”, which also was old; the fourth, “a movable sear carried thereby” was likewise *47 old; fifth, “a housing mounted on a wall of said receiver” was well known; and the final element, “means in said housing operatively connected with said sear for moving it in one direction” was but the use of the old and well-known elements consisting of a slide, a pivoted sear, or cammed surfaces, for transmitting motion in one direction to motion in a direction at an angle thereto (finding 30).
As all of the elements of these claims were old and had been used in various mechanical arts, as well as in the gun-making art, they accomplished no more than the aggregate of the old results and their use, even for a new purpose, would not be invention. Powers-Kennedy Contracting Corp., et al., v. Concrete Mixing and Conveying Co., 282 U. S. 175, 186; Mills v. United States, supra; and Curtiss, et al., v. United States, supra. Moreover as these claims read upon the Vickers gun, findings 6 and 23, and the Maxim gun, finding 25, which were preexisting structures in public use, they must be held invalid. As was said by the court in Office Specialty Mfg. Co. v. Fenton Metallic Mfg. Co., 174 U. S. 492, 498:
Putting the * * * patent in its most favorable light, it is very little, if anything, more than an aggregation of prior well-known devices, each constituent of which aggregation performs its own appropriate function in the old way. Where a combination of old devices produces a new result such combination is doubtless patentable, but where the combination is not only of old elements, but of old results, and no new function is evolved from such combination, it falls within the rulings of this court in Hailes v. Van Wormer, 20 Wall. 353, 368; Reckendorfer v. Faber, 92 U. S. 347, 356; Phillips v. Detroit, 111 U. S. 604; Brinkerhoff v. Aloe, 146 U. S. 515, 517; Palmer v. Corning, 156 U. S. 342, 345; Richards v. Chase Elevator Co. 158 U. S. 299.
See, also, Grinnell Washing Machine Co. v. Johnson Co., 247 U. S. 426, 433, in which the court said:
Applying the rule thus authoritatively settled by this court, we think no invention is shown in assembling these old elements for the purposes declared. No new function is “evolved from this combination”; the new *48 result, so far as one is achieved, is only that which arises from the well-known operation of each one of the elements.
Likewise the reasoning of the court in Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U. S. 285, 292, 293, is applicable here. The court said:
With these facts before him the most that can be said for the patents in suit is that they gave a somewhat different form to three features which were perfectly familiar and were similarly grouped in prior forms of tie-plates but without giving to any of them any new function and without accomplishing by them any new result. This brings the patents within the principle so often declared that “a mere carrying forward of the original thought, a change only in form, proportions, or degree, doing the same thing in the same way, by substantially the same means, with better results, is not such an invention as will sustain a patent.” Roberts v. Ryer, 91 U. S. 150; Belding Mfg. Co. v. Challenge Corn Planter Co., 152 U. S. 100; Market Street Cable Ry. Co. v. Rowley, 155 U. S. 621, 629. * * *
Clearly persuaded as we are that the slight variations claimed for the patents in suit from the plates which had gone before do not constitute patentable invention, we cannot consent to further extend this discussion by a minute comparison of them with earlier patents appearing in the record, but we content ourselves with adopting as comment not to be improved upon in such a case as we have here the following from a former decision of this court:
“The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who- make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real *49 advancement of tbe arts. It embarrasses tbe honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith.” Atlantic Works v. Brady, 107 U. S. 192, 200.
In view of our conclusion that plaintiff cannot recover under the first issue, further discussion of the other points made by the defendant is unnecessary. The petition is dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; Gkeek, Judge; and Booth, Chief Justice, concur.