# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### ARKELL SAFETY BAG CO. v. SAFEPACK MILLS.

(Circuit Court of Appeals, First Circuit. February 21, 1921. Application tor Rehearing Denied May 13, 1921.)

#### No. 1446.

1. Patents ⬯328—790,021, 790,022, for process and machine for making crinkled paper, void for anticipation and lack of invention.

   The Arkell patents, No. 790,021, for a process for making stretchable crinkled paper, and No. 790,022, for a machine for carrying out such process, *held* void for anticipation and lack of invention, in view of the prior art.

2. Patents ⬯328—790,023, for process and machine for making crinkled paper void for lack of invention.

   The Arkell patent, No. 790,023, for process and machine for making stretchable crinkled paper *held* void for lack of invention.

   Morton, District Judge, dissenting.

Appeal from the District Court of the United States for the District of Massachusetts; G. W. Anderson, Judge.

Suit in equity by the Arkell Safety Bag Company against the Safepack Mills. Decree for defendant, and complainant appeals. Affirmed.

The following is the opinion of Anderson, Circuit Judge, in the court below:

The plaintiff's counsel has presented his client's contentions with extraordinary ability, learning and grace. But I fail to be convinced that the claims in the plaintiff's patents, alleged to be infringed by the defendant, involve any real and patentable inventions. I think and find that the defendant is using rights that belong to the public and are not subject to any monopolistic control under patents Nos. 790,021, 790,022, and 790,023, now belonging to the plaintiff.

The admonition of the Supreme Court in Atlantic Works v. Brady, 107 U. S. 192, 199, 2 Sup. Ct. 225, 231 (27 L. Ed. 438) seems to me applicable to this case:

"The process of development in manufactures creates a constant demand for new appliances, which the skill of ordinary head workmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper

outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken by spontaneous trials and attempts in a hundred different places. To grant to a single party a monopoly of every slight advance made, except where the exercise of invention, somewhat above ordinary mechanical or engineering skill, is distinctly shown, is unjust in principle and injurious in its consequences.

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

The plaintiff claims, broadly, patents on the process and on a machine for converting finished paper into stretchable crinkled paper for wrapping and packing purposes. The gist of this process is that the finished paper is first moistened or saturated in one or two baths, smoothed or "laterally stretched" by a convexed roller, pressed against and drawn around a smooth roller, from which it is detached by striking against a blunt blade, called a doctor blade, after which it is pulled off on a carrier so regulated in speed as to leave in the crinkled paper the desired percentage of stretch as the paper is dried.

Crinkling moist paper by this general method of striking it against a doctor is old—how old this record does not show. Bartlett Arkell's patent, No. 565,587, issued on August 11, 1896, on an application dated December 5, 1895, for an expansible bag with "a lining of paper having a multiplicity of tight creases, * * * the creases in the paper lining being formed while the paper is wet," assumed that crinkled, stretchable paper was then producible by known processes. Such crinkled, stretchable paper was manufactured in substantial quantities by use of the doctor in Lawrence, Mass., as early as 1892. This appears from the entirely credible and reliable evidence of the witness Allen, who testified before me.

The Lysle patent No. 414,557, of 1889, shows knowledge of the essence of this crinkling process 30 years ago. So also does the English patent No. 1927 of 1894 to Lewer and Edwards.

If moistening finished paper so that it will crinkle as paper still moist from the process of manufacture will crinkle involves invention, Bainbridge in No. 548,103, issued October 15, 1895, covered that point. I cannot believe that, for present purposes, it makes any difference whether the moistening is done by submerging a roll around which paper is passing, or by running the paper from roll to roll through one or more saturating baths, or by spraying or by a combination of any or all these processes. To dampen finished paper, so that it will crinkle, may be done in a great variety of ways, with only ordinary mechanical skill applied to devices in common use for decades.

"The selection and putting together of the most desirable parts of different machines in the same or kindred art, making a new machine, but in which each part operates in the same way as it operated before and effects the same result, cannot be invention." Huebner-Toledo Breweries Co. v. Matthews Gravity Carrier Co., 253 Fed. 435, 447, 165 C. C. A. 177, 189.

This is really just what the plaintiff has done; and when war conditions developed new and enlarged needs and demands, and profits in meeting them, the defendant, by using simple and well-known processes and devices, sought to meet some of these new demands. In this course it acted within its rights, and its competition conduces to the general good.

Both plaintiff and defendant are using nothing but a combination of old elements and producing no new result.

"To sustain a patent on a combination of old devices, it is well settled that a new result must be obtained which is due to the joint and co-operating action of all the old elements." West Coast Safety Faucet Co. v. Jackson Brewing Co., 117 Fed. 295, 298, 54 C. C. A. 533, 536.

"It is not invention for a patentee to merely carry forward an old process, describing it in new terms and adapted equivalent modes under conditions recognized as possible within the knowledge of any mechanic." Cohn, Rissman & Co. v. Hickey-Freeman Co. (D. C.) 246 Fed. 256.

The language of Mr. Justice Swayne in Smith v. Nichols, 21 Wall. 112, 119 (22 L. Ed. 566), is in point:

"But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent. These rules apply alike, whether what preceded was covered by a patent or rested only in public knowledge and use."

What has been said also covers the so-called lateral extension, either by running the paper over a curved rod or by the use of a roller. Both of these methods of keeping paper, while in process of manufacture or conversion, smooth or "laterally extended," are very old; the plaintiff has no exclusive right therein.

Reference should be made to the testimony of Thomas E. Allen of the Monroe Felt & Paper Company of Lawrence, Mass., concerning the methods practiced by him and his concern in producing crinkled paper as early as 1892. Mr. Allen testified in substance that his company, under his direction, manufactured commercial quantities of crinkled, stretchable paper at or about that date. Counsel for the plaintiff attacks this evidence as inadequate to sustain a finding of prior public use, citing, among other cases, Emerson & Norris Co. v. Simpson Bros. Corp., 202 Fed. 747, 121 C. C. A. 113. While, without Mr. Allen's testimony, I think the same result of a lack of invention would be reached, yet, as Mr Allen testified before me, and as the court above may regard his testimony as important, I find that Mr. Allen was an honest and reliable witness. I accept his testimony as essentially accurate, and as sufficient to establish all the material facts to which he testified. He produced crinkled paper made by him as early as 1896.

One other point requires consideration. The defendant's counsel is apparently disposed to admit the validity of the claims in patent No. 790,023 referring to a definite predetermined extent of stretching out the crinkles, as distinguished from an incidental and unmeasured stretching out. He denies that his client uses the plaintiff's method. I do not think that the plaintiff has made out a case of infringement, assuming these claims to be valid. But I find it impossible to believe that so natural a mechanical adaptation of means to ends as so timing the speed of the off-take carrier with relation to the speed of the in-take carrier as to leave in the crinkled paper the desired percentage of stretch involves invention. Any competent mechanic, accustomed to the numerous rolling processes involved in paper making and paper converting, would, it seems to me, easily adopt this method.

The language of the court in Hover v. Atherton Mach. Co. (C. C.) 193 Fed. 73, is in point:

"The possibility that the thread of one screw might not accurately and instantly mesh with that of another is not a startling or unexpected situation, and the means of remedying it are obvious. Any skilled mechanic would accomplish it, and that, too, in the only way in which it could be accomplished; for it is undeniable that, where such a condition exists, one of the threads, either that of the nut or screw, must be moved sidewise, a distance not exceeding the width of the thread, and, once the two members are meshed, there certainly is no invention in maintaining such relation. An ordinary thumbscrew, spring, weight, or other simple device would accomplish it. The solution of such everyday problems ought not to be called inventive, and the grant of a monopoly therefor only tends to check and paralyze invention."

Probably it is unnecessary to determine the validity of these claims in No. 790,023, for it is clear that the incidental removal of some of the crinkling or stretchability put into the moistened paper by the doctor is a natural and almost inevitable result of any carrying off and drying process. This is all the defendant is doing. In this regard it is clearly acting within its rights.

Bill dismissed, with costs.

Nicholas M. Goodlett and John P. Bartlett, both of New York, for appellant.

Clyde L. Rogers, of Boston (George K. Woodworth, of Boston, on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and MOR-TON, District Judge.

BINGHAM, Circuit Judge. This is an appeal from a decree of the District Court for Massachusetts in an equity suit charging infringement of letters patent Nos. 790,021, 790,022, and 790,023, issued to James Arkell May 16, 1905, on applications filed December 21, 1901, July 17, 1903, and May 26, 1904, respectively. The first patent is for a process for making stretchable crinkled paper from finished paper for wrapping or packing purposes; the second is for a machine for making such paper according to the process of the first patent; and the third is for a process and a machine for making paper of this character, in which the extent of the crinkling is regulated to allow the required amount of stretch. The patents are owned by the plaintiff. The defenses are anticipation, noninvention, and noninfringement.

The process of No. 790,021 consists in taking suitable finished paper, moistening or saturating it in one or two baths, smoothing or stretching it laterally, pressing it against a smooth cylinder, so that it will closely adhere thereto, bringing it in contact with an obstruction, known as a doctor blade, which crinkles the paper, and then removing and drying the paper; the crinkles rendering it stretchable.

The machine of No. 790,022 for carrying out the process of 790,-021 consists in substance of a tank 9, in which rotates a drum 10, curved cross-rods 53 and 55 to laterally stretch the paper, a smooth roll 24 partly submerged in tank 17, a press roll 27, a doctor blade 36, and a carrier 49 to receive the crinkled paper as it comes from the doctor and carry it away to the driers.

In No. 790,023 the process and machine are in all substantial particulars the same as the process and machine of the patents just spoken of, with the single exception that the carrier is so constructed that its speed may be regulated with reference to the speed of the roll 24 and the discharge of the crinkled paper at the doctor as to take out a definite portion of stretch in the crinkled paper and leave in it the amount desired.

[1] In No. 790,021 the claims in issue are Nos. 1, 2, 10, 19, 20, 21, 22, and 23. Claims 21, 22, and 23 are all that we need refer to in the discussion of this patent. They read as follows:

"21. The process of making stretchable paper, such as is suitable for wrapping or packing purposes, which consists in passing finished paper through

a saturating bath; depositing it in a wet state upon a smooth-surfaced roller; thereafter squeezing it in close adherence to said roller; crowding the wet paper back against itself, while adhering to said roller, and thereby forming crinkles in the paper; and drying the paper thus crinkled, and rendering the crinkles permanent and the paper stretchable.

"22. The process of making stretchable paper, such as is suitable for wrapping or packing purposes, which consists in passing finished paper through a saturating bath; depositing it in a wet state upon a smooth-surfaced roller; thereafter squeezing it in close adherence to said roller; crowding the wet paper back against itself, while adhering to said roller, and thereby forming crinkles in the paper; and drying the paper thus crinkled, and rendering the crinkles permanent and the paper stretchable; the wet paper being extended laterally before it is crinkled.

"23. The process of making stretchable paper, such as is suitable for wrapping or packing purposes, which consists in wetting finished paper; depositing it in a wet state upon a smooth-surfaced roller; wetting the paper again while on said roller; thereafter squeezing it in close adherence to said roller; crowding the wet paper back against itself while adhering to said roller, and thereby forming crinkles in the paper; and drying the paper thus crinkled and rendering the crinkles permanent and the paper stretchable."

There are five steps called for by claim 21: (1) Wetting the finished paper, by passing it through a saturating bath; (2) depositing it in a wet state upon a smooth-surfaced roller; (3) thereafter squeezing it in close adherence to the roller; (4) crowding the paper back against itself, while adhering to the roll, causing the crinkles in the paper; and (5) drying the paper thus crinkled. In claim 22 there is an additional step—that of extending laterally the wet paper before it is crinkled. In claim 23 the lateral extension is omitted, but, as an additional step to claim 21, provision is made for rewetting the paper while it is on the roller.

In patent No. 790,022 the claims in issue are Nos. 5, 7, 11, 15, 17, 20, 24, 35, 38, and 39. The only claims that we need to quote are 7, 11, and 35. They read as follows:

"7. In a machine for making stretchable crinkled paper, the combination of a smooth-faced receiving-roll adapted to have the paper deposited thereon; a doctor associated with said roll, and against which the paper is carried on said roll for crinkling; a receptacle containing a bath through which the paper passes before it reaches the receiving-roll; and a pressure roll arranged to press the wet paper in close adherence to the receiving roll."

"11. In a machine for making stretchable crinkled paper, the combination of a smooth-faced receiving roll adapted to have the paper deposited thereon; a doctor associated with said roll, and against which the paper is carried on said roll for crinkling; a receptacle containing a bath through which the paper passes before it reaches the receiving roll; a pressure roll arranged to press the wet paper in close adherence to the receiving roll; and means for extending the paper laterally after it has been wet and before it reaches the doctor."

"35. In a machine for making stretchable crinkled paper, the combination of a smooth-faced receiving roll adapted to have the paper deposited thereon; a doctor associated with said roll, and against which the paper is carried on said roll for crinkling; means for wetting the paper while on the receiving roll; means for wetting the paper before it reaches the receiving roll; and a pressure roll arranged to press the wet paper in close adherence to the receiving roll."

The elements of claim 7 are: (1) A smooth-faced receiving roll; (2) a doctor associated with said roll, and against which the paper is

carried on the roll for crinkling; (3) a receptacle containing a bath through which the paper passes before reaching the receiving roll; and (4) a pressure roll to press the paper against the receiving roll. Claim 11 contains, in addition to the four elements of claim 7, means for extending the paper laterally after it has been wet and before it reaches the doctor; and claim 35 contains, in addition to the elements of claim 7, means for rewetting the paper while on the receiving roll. By claim 15 the pressure roll is made adjustable; by claim 20 the doctor is provided with means for varying its pressure; and by claims 38 and 39 means for drying the paper were added.

In patent No. 790,023 the process claims in issue are Nos. 12, 15, 16, 20, and 22, and the machine claims are 29, 30, and 33. We need only refer to claims 16 and 33, which read as follows:

"16. The process of making stretchable crinkled paper, which consists in pressing wet finished paper in close adherence to a roll, then crowding the wet paper while adhering to said roll back against itself to crinkle the paper, then delivering the wet crinkled paper to a carrier which travels at a greater speed than the paper is delivered from the crinkling roll, whereby the wet crinkled paper is stretched and the crinkles reduced, and drying the paper so as to make the reduced crinkles permanent and render the paper stretchable."

"33. In an apparatus for making stretchable crinkled paper, the combination of a roll to receive the paper; means for wetting the paper; means for crowding the wet paper back against itself while adhering to said roll to crinkle it; a carrier for the paper arranged to travel at a greater speed than the wet crinkled paper is delivered from the crinkling roll so as to reduce the crinkles; and means for drying the paper to make the reduced crinkles permanent and render the paper stretchable."

The steps contained in the process set out in claim 16 are: (1) Pressing wet finished paper in close adherence to a roll; (2) crowding the paper while adhering to the roll back against itself to crinkle it; (3) then delivering the crinkled paper to a carrier, which stretches it by traveling at a greater speed than the paper is delivered from the crinkling roll; and (4) drying the paper.

The elements in claim 33 are: (1) A roll to receive the paper; (2) means for wetting the paper; (3) means for crowding the wet paper back against itself while on the roll to crinkle it; (4) a carrier arranged to travel at a greater speed than the crinkled paper is delivered from the roll, so as to reduce the crinkles; and (5) means for drying the paper.

In the court below it was held that the process of making crinkled stretchable paper, from moist paper in process of manufacture, by striking it while on a roll against a doctor, was old (Lysle, 414,557, 1889; English patent to Lewer & Edwards, No. 1927 of 1894); that the process of making such paper from heavy finished paper when wet was old and well known as early as December, 1895, as shown in the patent granted to Bartlett Arkell, No. 565,587, of August 11, 1896, applied for December 5, 1895; and that the process and apparatus for the manufacture of crinkled paper from thin finished paper when wet was also shown in the patent granted to Bainbridge, No. 548,108, October 15, 1895; that, although Bainbridge did not pass his thin finished paper through a saturating bath before it reached the crinkling roll, he nevertheless provided a tank by means of which the fin-

ished paper was indirectly wet through the medium of a roll which passed through the bath and carried the moisture to the paper, the roll also operating to squeeze or press the moistened paper against the crinkling roll just before it reached the doctor; that the fact that the plaintiff passed its heavy finished paper directly through the bath before it reached the crinkling roll in both the process and apparatus patents, and in some of the claims provided for rewetting the paper at the crinkling roll, did not disclose features involving invention, but only the application of obvious steps and ordinary mechanical skill as applied to methods and devices well understood; that the step or practice of laterally extending the paper sheet and the means employed of a curved rod or roll for carrying it out were old in the paper-making art, and their application in the plaintiff's process and machine likewise did not involve invention. Letters patent No. 16,430, to Blake, January 20, 1857, and No. 37,790, to Schuyler, February 24, 1863. Means for adjusting the pressure roll (Bainbridge, No. 548,108; Schuyler, No. 37,790), for varying the pressure of the doctor (Lewer & Edwards, No. 1,927), and for drying the paper (Bainbridge, Lysle, and Lewer & Edwards) were regarded as of the same character.

Having given due consideration to the arguments of counsel and the proofs submitted, we are of the opinion that the conclusion reached by the court below in dismissing the bill as to patents Nos. 790,021 and 790,022 was right, and for the reasons stated, without regard to the alleged prior use of Allen.

[2] Claims 16 and 33 of patent No. 790,023 remain to be considered. These claims are for a process and a machine which involve the stretching and reduction of the crinkles in the paper after leaving the doctor and during its transfer to the drier, due to the movement of the conveyor which travels at a greater speed than the paper is delivered from the crinkling roll and the doctor. It will be seen that these are broad claims, and that the step of reducing the stretch of the paper and the means for accomplishing it are not specifically limited to reducing the stretch a predetermined amount. The specification of the patent, however, states that—

"the invention seeks to produce stretchable crinkled paper in which the extent of the crinkling is reliably regulated with reference to the particular work which the crinkles are required to perform when the paper is in active use," and that "the wheels 62 and 63 are removable, so that wheels of varying sizes may be substituted for either or both. This enables the ratio of the diameter of these wheels to be varied as desired, so as to regulate the amount of crinkle in the paper as finally finished."

The plaintiff contends that, inasmuch as the specification discloses that the invention resides in reducing the stretch in the crinkled paper a predetermined amount, the claims should be read as limited in that respect to the disclosure of the specification. If we regard them as thus limited, the question presented is whether the claims involve invention or are infringed; it being conceded that the prior art does not disclose a process or device that anticipates them. In the court below it was held that the claims did not involve invention, and, if they did, were not infringed.

In the English patent to Lewer & Edwards, No. 1,927 of 1894, means are disclosed for carrying the crinkled paper from the doctor to the drier; and the rolls by which this is accomplished are so arranged with reference to one another as not to reduce the crinkles in the paper; and it is claimed that the speed of the drying roll $D^1$ is so regulated and reduced with reference to the speed of the receiving roll $P^1$ as not to lessen the stretch in the paper. But we are unable to determine from the specification and drawings that the speed of $D^1$ is so reduced and regulated.

In Bainbridge, No. 548,108, the crinkled paper is taken from the doctor to the drier by means of a carrier, and in the specification it says that the crinkled paper "falls directly upon the traveling receiver and conveyer $F$, and is carried away to the drier * * * without disturbing or pulling out the crinkles formed therein, * * *" and that "there is no strain upon the paper which would have a tendency to destroy the crinkled effect in any degree." This would indicate that Bainbridge had conceived the idea of regulating the speed of the carrier with reference to the speed of the crinkling roll, so that the crinkled paper would be moved on the carrier at the same speed it came off the doctor, and thus avoid any perceptible stretch.

In the patent to Lysle, No. 414,557, the crinkled paper is carried from the doctor over the roll $g$ to the drier roll $B$; the drier roll and the roll $g$ being operated by power; and in the specification it is stated that—

"After passing over the edge of the doctor plate the web [crinkled paper] may pass directly to the guide-roll $g$, the speed of the latter and of the drying cylinder $B$ being so regulated that it will not draw the web forward any faster than it is crowded over the edge of the plate [the doctor], so that there will be no tendency to smooth or straighten out the wrinkles formed in the web by reason of the crowding to which it has been subjected in its endeavor to pass the edge of the plate."

This patent, as well as the one to Bainbridge, discloses the idea of regulating and reducing the speed of the transfer means with reference to that of the crinkling roll and the paper as it comes off the doctor, so as to maintain the stretch or crinkles in the crinkled paper; the movement of the paper as it comes off the doctor being at a less speed than that at which it was carried when on the crinkling roll.

It being an obvious thing and well known that the stretch in the crinkled paper as discharged from the doctor would be reduced if the transfer means with the paper upon it were made to travel faster than the speed at which the paper was moving when discharged from the doctor, and it being disclosed in the prior art that the amount of stretch put into the crinkled paper at the doctor could be maintained during its transfer by giving the transfer means a given ratio of speed with reference to the speed of the crinkling roll and of the discharged paper, we think that it did not involve invention to change the ratio of speed between the transfer means and the crinkling roll by increasing the speed of the transfer means a fixed percentage so as to take out a given percentage of the stretch in the paper, either as a step in the process

or an element in the machine, and that the court below was right in dismissing the bill as to patent No. 790,023.

The decree of the District Court is affirmed, with costs to the appellee.

MORTON, District Judge (dissenting). It is beyond dispute (1) that nobody before Arkell had ever made any sort of crinkled paper having a stated and predetermined amount of stretch, and that such paper when first manufactured by him was a new product; (2) that Arkell's machine, the patents on which are in question, was invented by him to make such paper, and that nothing identical with that machine in construction, and nothing which would accomplish the same result had previously been devised. These facts seem to me almost conclusive on the issue of invention.

Moreover, there is no evidence, except the recitals in the patent to B. Arkell, which I shall refer to later, that anybody before Arkell had crinkled in any practical way finished heavy paper in a manner which preserved the free "stretchability" essential to the uses here in question. The only previous crinkling of heavy paper had been in connection with the original manufacture, and with the object of making a thick elastic paper for carpet linings and packing—an essentially different article from Arkell's and not adapted to the same uses.

Remaking a finished product may well involve difficulties, which are not present when the same result is obtained as part of the original process of manufacture, and which cannot be solved simply by reference to that process. On the testimony of the defendant's witness Allen and other witnesses, that was true in this instance; and it was a very different thing to crinkle heavy paper after it had been finished, from doing so by merely running it against a doctor blade adjusted to the last roller on the paper-making machine, before the paper had been dried.

The saturating bath, the squeeze roll, the lateral spreading, the second wetting while adherent to the crinkling cylinder, the carrier adjusted to retain the correct degree of crinkling, all as embodied in the Arkell machine, constitute a set of unified operations which admittedly had never before been brought together, some of the essential steps in which, e. g., the separate squeeze roll, the rewetting, and the adjustment of the carrier, were wholly new, and which achieved a new and valuable result. This constituted patentable invention. Grinnell Washing Mach. Co. v. E. E. Johnson Co., 247 U. S. 426, 38 Sup. Ct. 547, 62 L. Ed. 1196. To say, as my Brethren in effect do say, that some of the elements being old, and those which are new being obvious as connecting steps between those which were old, therefore the combination or process as a whole lacked invention, seems to me not in accord with the established law on the subject of invention.[1] Arkell's

[1] See Cadillac Motor Car Co. v. Austin, 225 Fed. 983, 141 C. C. A. 105, for discussion of a very similar question, and also, as to what constitutes invention, Proudfit Loose Leaf Co. et al. v. Kalamazoo Loose Leaf Binder Co., 230 Fed. 120, 144 C. C. A. 418; Frey et al. v. Marvel Auto Supply Co., 236 Fed. 916, 150 C. C. A. 178; Ohmer Fare Register Co. v. Ohmer et al., 238 Fed. 182,

machine, like his process, should be judged as a whole, not by the novelty of each separate element. Stead Lens Co. v. Kryptok Co., 214 Fed. 368, 376, 377, 131 C. C. A. 144.

Great stress is laid in the majority opinion on certain recitals in the patent to B. Arkell, dated August 11, 1896; but his testimony as to those recitals, and the state of the paper-making art at that time, is ignored without discussion, and I think without sufficient reason. He is not contradicted. Evidence to contradict him on the state of the art could certainly have been obtained by the defendant, and no doubt it would have been presented, if what he says were not true. The usefulness of the bag which he patented was recognized, but he was unable to obtain crinkled paper suitable for making it before his father's inventions here in question, a lapse of several years.

In order to negative invention, it devolved upon the defendant to prove that the crinkling of finished heavy paper in such a way as to produce and retain free "stretchability" of a predetermined amount was something which anybody skilled in the paper-making art could have done at the time of the patents in suit. The evidence, in my opinion, is far from justifying such a finding. Controlling the "stretchability" of the product by varying the speed of the carrier had never been even suggested. As applied to the Arkell machine it was a thought not lacking in brilliancy and of great value, which, as it seems to me, was by no means anticipated by the knowledge that in crinkling machines the speed of the carrier had to be adjusted to the rate at which the paper came off the doctor blade. The moving parts of any machine have to be in adjustment with each other; but it does not follow that all results which can be obtained by variation of the adjustments are obvious.

The paper as it came from the doctor blade was crinkled more than necessary for actual use, and was so shortened that much of it was wasted. It was essential to avoid this loss, and at the same time to make sure that the product would have the requisite capacity to stretch freely. Arkell was the first to accomplish this result, and was the first to crinkle successfully finished heavy paper. To this extent, at least, I think that his patents are essentially pioneer patents, and entitled to the liberal construction accorded such grants. On the reasoning of my Brethren, Watt's conception of the steam engine involved no invention, because the expansive force of confined steam was previously known and cylinders and pistons were in common use.

If there be doubt on the question whether these patents show invention, the long public acquiescence in them entitles the patentee and his assigns to have that doubt resolved in his favor. The patents have been outstanding about 13 years. This is the first time their validity has ever been questioned in court proceedings. They are of recognized value, and this long acquiescence clearly shows that the public familiar with the art to which they belong has not supposed that they lacked invention or were invalid on that ground. Such public opinion

151 C. C. A. 258; Neill et al. v. Kinney, 239 Fed. 309, 152 C. C. A. 297; Barber v. Otis Motor Sales Co., 240 Fed. 723, 153 C. C. A. 521.

on such a matter ought not to be lightly disregarded; it is too likely to be right.

Holding these views, I am of opinion that several of the mechanical and process claims are not void for lack of invention and have been infringed.