## ANGIER et al. v. NEHRING ELECTRICAL WORKS.

### No. 4359.

Circuit Court of Appeals, Seventh Circuit.
Dec. 3, 1930.

Osgood H. Dowell, of Chicago, Ill., and Emery, Booth, Varney & Townsend, of Boston, Mass., for appellants.

Charles O. Shervey, of Chicago, Ill., and Macleod, Calver, Copeland & Dike, of Boston, Mass., for appellee.

Before ALSCHULER and SPARKS, Circuit Judges, and FITZHENRY, District Judge.

ALSCHULER, Circuit Judge.

One would hardly suspect from reading the claims that the invention involved simply the employment of strips of craped or crinkled paper for helically wrapping around automobile tires, or other similarly shaped commercial articles, instead of plain paper strips as theretofore employed. The claimed advance in the art is that in such use the craped paper will readily conform itself to the surface of the tire; and in case of distortion of the tire in handling, the wrapping not only will not break, but will at once conform to the restored normal shape of the tire.

In appellant's brief it is stated that "in a sense plaintiff's invention consists in the use of a craped paper for making a wrap," and, again, "the patented package consists of an article bound with turns of partially expanded, resiliently expansible, craped paper firmly drawn thereabout." But the claims make no reference to paper as the wrapping material. They specify any material which will conform itself to the surface of the tire. It might be thin rubber sheeting, or rubberized cloth—or any of the various textiles so woven as quite readily to expand and contract.

It nowhere appears that craped or crinkled paper, expansible and contractable, usable generally for wrapping or packing, was new with this patentee. Indeed, we would be justified in taking judicial notice of its long previous use. Legal literature shows it in a litigation involving, inter alia, a "process for making stretchable crinkled paper from finished paper for wrapping or packing purposes," under United States patent to Arkell, No. 790,021, 1905. The court held this patent, together with two others of same date to same party, one for a machine and the other for another process for making such crinkled paper, void on various patents of many years before. Arkell Safety Bag Co. v. Safepack Mills, 272 F. 1 (1 C. C. A.).

Appellant makes much of the fact that in this patent there is employed the resilient quality of such paper—its tendency after stretching to resume its former state. But this quality is inherent in craped or crinkled fabrics—textiles or papers. This is common knowledge, and the patent does not even remotely claim invention in this respect. It illustrates a machine "of known type for use in wrapping an annular article with helical turns of strips," and with further verbosity and circumlocution points out that this old wrapping machine is usable also for helically winding the strips of the patent.

It is thus very plain from the bill that every element of the patented "package" is venerably old—the tire, the "strip" or "wrapping" or "covering," including knowledge of its resilient qualities (if the claims may be construed as covering the employment of craped or crinkled *paper*)—and the practice of helically winding paper strips around automobile tires.

In the patented article the craped paper serves no other purpose, and has no other or different function or influence or capability, than was long before well known and understood. If each time when the inherent and well-recognized qualities of an element were first applied to a particular use a patentable combination would then be born, there might be no end of the patents in the use of craped paper for wrapping articles—one for wrapping tires, another for wrapping rag dolls or other rubbery or resilient articles, one for bakery goods, another for upholstered articles, and so ad infinitum.

Surely the quality of invention does not reside in the employment of an old element in a connection wherein it exhibits only those uses, functions, and qualities which were long theretofore well recognized and understood. Concrete application of this principle was made in De Vry Corp. v. Acme Motion Picture Projector Co., 262 F. 970, 971, where, as here, there was dismissal of the bill for want of equity on its face. This court, through Judge Baker, there said:

"In the present case the claims in suit and the specification explanatory thereof make it clear that Lockwood contributed nothing to the strict art of projecting moving pictures, and that his improvement consisted in ventilating by means of a rotary fan the moving picture cabinet in order to prevent the inflammable film from being subjected to excessive heat. If invention may be predicated upon that act, then any one could obtain a monopoly of the use of a ventilating fan in every cabinet or box or room into which he put a different apparatus, or in which existed a different condition on account of which he desired ventilation for a different purpose."

We are well satisfied that the District Court properly dismissed the bill, and its decree is affirmed.